EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Popular de Puerto Rico<br><br>Recurrida<br><br>v.<br><br>Andrés Gómez Alayón, Nelia López del Valle y la Sociedad Legal de Gananciales Compuesta por ambos<br><br>Recurridos<br><br>Oriental Bank<br><br>Peticionario | Certiorari<br><br>2023 TSPR 145<br><br>213 DPR ___ |

Número del Caso:  CC-2021-0045

Fecha:  19 de diciembre de 2023

Tribunal de Apelaciones:

    Panel X

Abogado de la parte peticionaria:

    Lcdo. José M. Martínez Rivera

Abogado del Banco Popular de Puerto Rico:

    Lcdo. Husmail Figueroa Ríos

Materia:  Práctica Apelativa y Procedimiento Civil – El Tribunal de Apelaciones no debe intervenir con las determinaciones del foro primario sobre el manejo de los casos ante su consideración en ausencia de un abuso de discreción.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Banco Popular de Puerto Rico<br><br>Recurrida<br><br>v.<br><br>Andrés Gómez Alayón, Nelia López Del Valle y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos<br><br>Oriental Bank<br><br>Peticionario | CC-2021-0045 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 19 de diciembre de 2023.

En este caso, nos corresponde dilucidar si el Tribunal de Apelaciones abusó de su discreción al expedir un recurso de *certiorari* para modificar una determinación del Tribunal de Primera Instancia que dio por cumplida una *Orden de mostrar causa* y no sancionó a un tercero -que no es parte en el pleito-.

Adelantamos que, en efecto, el Tribunal de Primera Instancia emitió una determinación conforme al ejercicio de su discreción y enmarcada en el criterio de la razonabilidad. Por tanto, revocamos la determinación del foro apelativo intermedio.

## I

El 27 de julio de 2017, el Tribunal de Primera Instancia (TPI) dictó una *Sentencia* por la vía sumaria al amparo de la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, en contra del Sr. Andrés Gómez Alayón, la Sra. Nelia López del Valle y la Sociedad Legal de Gananciales compuesta por ambos (demandados). Así, el foro primario condenó a los demandados al pago de las cuantías reclamadas por Banco Popular de Puerto Rico (BPPR).[1] En esencia, determinó que, según los términos y condiciones de la tarjeta de crédito, los demandados adeudaban al BPPR la suma ascendente a $103,176.51 más intereses, costas y $10,317.65 por concepto de honorarios de abogado.

Así las cosas, ante el incumplimiento del pago establecido en la *Sentencia*, el 20 de marzo de 2018, BPPR presentó un *Escrito solicitando ejecución de sentencia* en el que peticionó la ejecución de los remedios postsentencia para recuperar su acreencia.[2]

Por una parte, BPPR solicitó la ejecución de la *Sentencia* y que se designara un depositario. Para ello, este presentó un documento intitulado *Señalamiento de bienes* dirigido al alguacil del tribunal. De otra parte, también requirió que se extendieran órdenes a ciertas instituciones bancarias para que informaran si los demandados mantenían

---

[1] *Sentencia* del TPI, Apéndice de *Petición de certiorari*, págs. 74-83.

[2] *Escrito sobre ejecución de sentencia*, Apéndice de *Petición de certiorari*, págs. 84-85.

dinero depositado en sus sucursales. De ser así, solicitó que se ordenara a tales instituciones a abstenerse de permitir el retiro de los fondos depositados dentro del periodo comprendido entre el recibo de la orden y 20 días posteriores a la fecha de la orden emitida.[3]

El 3 de abril de 2018, el foro primario expidió una *Orden sobre ejecución de sentencia* en la que declaró "ha lugar" la solicitud de BPPR y expidió un mandamiento al alguacil del foro primario para que procediera con la ejecución de los bienes disponibles.[4] Así, en esa misma fecha, emitió el *Mandamiento de Ejecución de Sentencia* y una *Orden*.

El *Mandamiento de Ejecución de Sentencia* estaba dirigido al alguacil del Tribunal de Primera Instancia para que procediera a ejecutar la *Sentencia* dictada en este caso sobre los bienes de los demandados. En dicho mandamiento se dispuso además que, de embargarse dinero en efectivo, el alguacil del Tribunal procedería con la consignación y se designó un depositario según fue solicitado por BPPR.[5] Conforme a lo anterior, la *Orden* del Tribunal de Primera Instancia determinó que:

> La parte demandante ha presentado una moción solicitando órdenes dirigidas a las instituciones bancarias, aseguradores y de inversiones que se nombran más adelante, para

---

[3] *Moción solicitando órdenes*, Apéndice de *Petición de certiorari*, págs. 86-87.

[4] *Orden sobre ejecución de sentencia*, Apéndice de *Petición de certiorari*, pág. 91.

[5] *Mandamiento de ejecución de sentencia*, Apéndice de *Petición de certiorari*, pág. 191.

que le notifiquen a la parte demandante, a través de su representante legal, […] si los demandados, Andrés Gómez Alayón, su esposa Nelia López Del Valle y la sociedad legal de gananciales compuesta por ambos; individual y/o en conjunto; mantienen dineros depositados en sus sucursales u oficinas. **De ser en la afirmativa dicha notificación, se le ordena a dicha institución a no permitir el retiro de los fondos depositados a nombre de la parte demandada dentro del periodo comprendido entre el recibo de esta orden y veinte días posteriores a la fecha de depósito en el correo o de la fecha de la comunicación por fotocopiadora o correo electrónico al demandante de la comunicación objeto de la presente orden.**
. . . . . . .
**e. Scotiabank de Puerto Rico, División Legal: Ave. Ponce de León 273, Hato Rey, PR 00918.**
. . . . . . .
Se le apercibe a la institución requerida y/o al oficial responsable que de no cumplir con esta orden en los términos aquí dispuestos podría ser sancionado por su incumplimiento. (Énfasis suplido).[6]

Como parte de los procedimientos, en reacción a la orden antes reseñada, el 7 de junio de 2018, Scotiabank (Oriental Bank)[7] envió una carta al BPPR y especificó las cuentas bancarias de los demandados.[8]

Luego, el Alguacil General, procedió con el embargo de una cuenta en Scotiabank con $44,942. En lo pertinente, certificó que el 18 de junio de 2018, se personó a Scotiabank para diligenciar el *Mandamiento de Ejecución de Sentencia* y

---

[6] *Orden*, Apéndice de *Petición de certiorari*, pág. 190.

[7] Adviértase que Scotiabank se fusionó con Oriental Bank. Véase *Moción sobre sustitución de parte*, Apéndice de *Petición de certiorari*, pág. 193.

[8] Cabe resaltar que ambos demandados son titulares de las cuentas en Scotiabank. Apéndice de *Petición de certiorari*, pág. 90.

embargó la cantidad de $44,920, por conducto del Oficial de la División Legal.[9]

Así las cosas, el 21 de junio de 2018, el demandado presentó, por derecho propio, una petición para acogerse a la protección del Capítulo 13 del Código de Quiebras federal (Código de Quiebras) ante la Corte de Quiebras.[10]

Ese mismo día, el demandado se personó a la sucursal de Scotiabank en Hato Rey para notificar la radicación de dicha petición y solicitar la liberación de los fondos depositados en sus cuentas. Posteriormente, el 22 de junio de 2018, Scotiabank autorizó la liberación del "hold" impuesto el 18 de junio de 2018, sobre las cuentas de los demandados permitiendo que el demandado retirara los fondos.

En cuanto a la petición de quiebra, el 28 de junio de 2018, la Corte de Quiebras desestimó la petición por incumplir con la entrega de documentos.[11]

El 4 de septiembre de 2018, el BPPR mediante *Moción solicitando retiro de fondos* solicitó al foro primario que emitiera una orden a la Oficina de Alguaciles y/o Unidad de Cuentas para que se liberaran los fondos a favor del BPPR y

---

[9] Apéndice de *Petición de certiorari*, pág. 92.

[10] *Notice of bankruptcy Case Filing*, Apéndice de *Petición de certiorari*, pág. 95.

[11] *Order Dismissing Case*, Apéndice de *Petición de certiorari*, pág. 96. Cabe resaltar que la Corte de Quiebras consignó como fundamento la falta de entrega de documentos como el *Creditor Mailing Matrix*.

autorizaran el retiro de los fondos depositados en la Secretaría del Tribunal.[12]

Así, el 10 de septiembre de 2018, el foro primario emitió una *Orden* a la Unidad de Cuentas para que certificara la cantidad de fondos.[13] No obstante, en vista de que Scotiabank había desembolsado los fondos al demandado, no existían fondos disponibles en la secretaría.

En virtud de lo anterior, el 5 de diciembre de 2018, la representación legal de BPPR escribió una carta a la División Legal de Scotiabank para informar que incumplió con la orden de embargo del Tribunal de Primera Instancia al liberar los fondos al cliente ante la presentación de la petición de quiebra sin una orden de algún foro. Puntualizó que Scotiabank le informó que el dinero no fue consignado en el foro primario, porque fue liberado con la presentación del documento sobre la petición de quiebra.[14]

Así las cosas, el BPPR presentó una moción ante el foro primario solicitando que se le ordenara a Scotiabank mostrar causa sobre las razones que tuvo para entregar el dinero al demandado.[15]

---

[12] *Moción solicitando retiro de fondos*, Apéndice de *Petición de certiorari*, pág. 97.

[13] Apéndice de *Petición de certiorari*, págs. 99-100.

[14] Apéndice de *Petición de certiorari*, págs. 101-102.

[15] *Moción solicitando orden de mostrar causa*, Apéndice de *Petición de certiorari*, págs. 103-104. Posteriormente, el 14 de marzo de 2019, atendida la *Moción solicitando orden de mostrar causa*, el foro primario emitió una *Orden* en la que solicitó que en el término de 10 días certificara haber notificado la moción a la parte contraria y a la división legal de Scotiabank. Además, expresó que en igual tiempo presentara un proyecto de orden solicitada para evaluación. *Orden*, Apéndice de *Petición de certiorari*, pág. 105.

**Evaluada la solicitud de BPPR, según solicitado, el 5 de abril de 2019, el foro primario emitió una *Orden* en la que dispuso lo siguiente:**

> Se ordena a Scotiabank de Puerto Rico para que en el término perentorio de 20 días a partir de la notificación de la presente **muestre causa por el incumplimiento de las órdenes de este Tribunal […] sobre ejecución de sentencia y sustente las razones y fundamentos por los cuales no se deba sancionar.**
>
> .   .   .   .   .   .   .   .   .
>
> Se le apercibe a Scotiabank de Puerto Rico que de no cumplir lo dispuesto en la presente orden podría ser hallado incurso en desacato. (Énfasis suplido).[16]

El 3 de mayo de 2019, Scotiabank presentó su *Moción para mostrar causa* mediante la cual explicó que el 18 de junio de 2019, tras recibir la *Orden* del foro primario para el embargo de los fondos depositados en las cuentas pertenecientes a los demandados, se congelaron las cuentas operacionalmente y se le explicó al alguacil que el dinero sería consignado en la Secretaría del Tribunal de Primera Instancia después de que el banco procesara las transacciones pendientes en las cuentas congeladas e hiciera la evaluación correspondiente.

Scotiabank sostuvo que el 21 de junio de 2018, el demandado se personó a la sucursal para informar que presentó una petición de quiebra al amparo del Capítulo 13 del Código de Quiebras y solicitó la liberación de los fondos de sus cuentas. Indicó que, como resultado de la presentación de la quiebra, se activó el proceso de paralización automática por

---

[16] *Orden de mostrar causa*, Apéndice de *Petición de certiorari*, pág. 112.

disposición de ley sobre toda gestión dirigida a cobrar o ejecutar sentencia alguna del caudal de la quiebra -que incluye aquellas que sean previas a la petición- y, además, resaltó que los tribunales estatales quedaron privados de jurisdicción automáticamente. Así, adujo que en el momento en que advino en conocimiento sobre la petición de quiebra tenía la obligación legal de cumplir con la Sección 362(a) del Código de Quiebras, 11 USC sec. 362, sobre la paralización automática que no requiere notificación formal para tener efecto.

Por otro lado, planteó que, el 14 de junio de 2012, la Oficina de Administración de los Tribunales (OAT) emitió la *Circular Núm. 34* para establecer el *Protocolo para facilitar el trámite de embargos de cuentas bancarias y adopción del formulario OAT-1670 Recibo* (Protocolo de embargos)[17] que reconoce que la institución debe analizar la solicitud con los documentos de embargo y concluir que no existe impedimento para el desembolso de los fondos -para lo cual debe esperar al menos 3 días desde que se diligencia la orden de embargo-. Además, adujo que el *Protocolo de embargos* establece que el embargo no se perfecciona hasta que el banco consigna el dinero en el tribunal. Asimismo, indicó que la radicación de la quiebra el 21 de junio de 2018, le impuso una obligación afirmativa de dejar sin efecto el "hold" de las cuentas. Por ello, arguyó que, el 22 de junio de 2018,

---

[17] Oficina de Administración de los Tribunales, *Protocolo para facilitar el trámite de embargos de cuentas bancarias y adopción del formulario OAT-1670 Recibo*, Circular Núm. 34, 14 de junio de 2012.

después de confirmar que el demandado estaba protegido por la paralización automática, permitió el retiro de los fondos. Finalmente, alegó que haber retenido el dinero al negarse a liberar el "hold" sobre las cuentas conllevaba el incumplimiento con la Sección 362 del Código de Quiebras, *supra*, por lo que la única alternativa legal era la liberación del "hold" para no responder por daños.

**El 7 de mayo de 2019, el Tribunal de Primera Instancia dio por cumplida la *Orden de mostrar causa* dirigida con anterioridad a Scotiabank.[18]**

El 23 de mayo de 2019, el BPPR presentó una *Dúplica a moción para mostrar causa*. Adujo que Scotiabank mantuvo los fondos congelados durante 11 días.[19] Explicó que contrario a lo indicado, tenía una comunicación de Scotiabank de la cual surgía que la cuenta de los demandados fue congelada el 7 de junio de 2018, antes de que el alguacil embargara los fondos el 18 de junio de 2018. Arguyó, además, que el Código de Quiebras establece un procedimiento para que el deudor que presenta una petición de quiebra pueda reclamar el dinero que le fue embargado, y resaltó que debía ser tramitado a través de la Corte de Quiebras, y no por el Tribunal de Primera Instancia que perdió toda jurisdicción. Sostuvo que es el Síndico de la Corte de Quiebras quien determina si el dinero embargado se aplica a las deudas o se le devuelve al

---

[18] Cabe resaltar que el 14 de mayo de 2019, el foro primario reiteró su determinación al expresar "Damos orden por cumplida". Apéndice de *Petición de certiorari*, pág. 165.

[19] *Dúplica a moción para mostrar causa*, Apéndice de *Petición de certiorari*, págs. 122-124.

quebrado. En vista de lo anterior, explicó que Scotiabank venía obligado a paralizar todo procedimiento y no podía liberar los fondos, ya que no estaban bajo su custodia.

El 28 de mayo de 2019, Scotiabank compareció como parte con interés mediante *Tríplica a moción para mostrar causa* en la cual reiteró sus argumentos anteriores y aclaró que las cuentas de los demandados se congelaron en el momento en que el alguacil diligenció la orden el 18 de junio de 2018 y no el 7 de junio de 2018. Finalmente, solicitó al foro primario que tomara conocimiento del cumplimiento de las órdenes emitidas y lo relevara del caso. [20]

Así las cosas, el 22 de agosto de 2019, el foro primario emitió una *Resolución* en la que, en síntesis, dispuso de la *Moción solicitando orden de mostrar causa* presentada el 8 de marzo de 2019 por BPPR, la *Dúplica a moción para mostrar causa* presentada por BPPR, la *Tríplica a Moción para mostrar causa* presentada por Scotiabank, y la *Moción solicitando reconsideración* presentada por BPPR, al determinar, en lo aquí pertinente, lo siguiente:

> .   .   .   .   .   .
> 3. El 3 de abril de 2018 se emitió orden sobre ejecución de sentencia.
> 4. El Mandamiento de Ejecución se expidió el 18 de abril de 2018.
> 5. El Mandamiento de Ejecución de Sentencia fue diligenciado por los alguaciles el 18 de junio de 2018. Haciendo constar al dorso que se embargó la cantidad de $44,920.00 en Scotiabank.
> .   .   .   .   .   .
> 9. Scotiabank alegó mediante Moción para mostrar causa del 23 de mayo de 2019 que recibieron la Orden de Ejecución de Sentencia y Señalamiento

---

[20] *Tríplica a moción para mostrar causa*, Apéndice de *Petición de certiorari*, págs. 128-132.

de Bienes el 18 de junio de 2018. Esa orden fue recibida y procesada por un oficial de la División Legal y Cumplimiento Regulatorio de Scotiabank. Ese día se congelaron parcialmente varias cuentas y […] se le explicó al Alguacil que el dinero se consignaría luego de dejar al Banco procesar las transacciones pendientes en las cuentas congeladas e hiciera la evaluación correspondiente. El 21 de junio de 2018 el codemandado Andrés Gómez Alayón se personó a la Sucursal de Scotiabank de Hato Rey para notificar petición de quiebra y solicitar liberación de fondos de las cuentas de depósito. El 22 de junio de 2018, luego de confirmar que el codemandado estaba protegido por la paralización automática de la quiebra, se autorizó la liberación del "hold" sobre las cuentas de depósito. En igual fecha, éste retiró los fondos de las cuentas.[21]

Conforme a las determinaciones de hechos formuladas, concluyó que:

En este caso la parte demandada presentó su quiebra el 21 de junio de 2018, tres días luego de que los alguaciles fueron al banco a poner en vigor la orden de ejecución de sentencia y su mandamiento. **Dicha orden no surtió efecto inmediato ya que el banco tenía la obligación de procesar las transacciones pendientes. Una vez presentada la petición de quiebra el Tribunal de Primera Instancia pierde su jurisdicción y se queda sin efecto todo proceso de reclamación de cobro.** Por lo antes expuesto damos la orden de mostrar causa (del 14 de marzo de 2019) por cumplida. (Énfasis suplido).[22]

De esta forma, determinó que Scotiabank demostró no haber incumplido con la orden del tribunal.

En desacuerdo, el 4 de octubre de 2019, BPPR presentó una *Moción solicitando reconsideración* en la que peticionó que se ordenara a Scotiabank consignar la suma embargada el

---

[21] *Resolución* del Tribunal de Primera Instancia, Apéndice de *Petición de certiorari*, págs. 60-61.

[22] Íd., págs. 62-63.

18 de junio de 2019.[23] Atendida la reconsideración, el foro primario la declaró "no ha lugar" mediante *Resolución*.[24]

Inconforme, el 27 de noviembre de 2019, el BPPR presentó un recurso de *certiorari* ante el Tribunal de Apelaciones.[25] Expresó que Scotiabank incumplió con la orden de embargo del foro primario al liberar los fondos -3 días después del embargo- en lugar de consignar el dinero. Arguyó que, después de la consignación del dinero, el demandado debía reclamar la devolución del dinero en el Tribunal de Quiebras. Añadió que el foro primario erró al no celebrar una vista evidenciaria antes de dar por cumplida la *Orden de mostrar causa*. Finalmente, solicitó la revocación de la Resolución del 22 de agosto de 2019. También, indicó que se le ordenara a Scotiabank consignar en el tribunal los $44,920, embargados por el alguacil, o que, en la alternativa, ordenara que el foro primario llevara a cabo la celebración de una vista evidenciaria para que el Oficial de Scotiabank sustentara las razones que tuvo para liberar los fondos legalmente embargados.

El 20 de diciembre de 2019, Scotiabank compareció ante el Tribunal de Apelaciones como parte interventora en el proceso postsentencia del caso de epígrafe mediante *Alegato*

---

[23] *Moción solicitando reconsideración*, Apéndice de *Petición de certiorari*, pág. 65.

[24] *Resolución*, Apéndice de *Petición de certiorari*, pág. 69.

[25] *Recurso de certiorari*, Apéndice de *Petición de certiorari*, págs. 43-55.

*en oposición a expedición de recurso.*[26] Sostuvo que la radicación de quiebra del demandado constituyó un impedimento legal para el desembolso de los fondos y le impuso a una obligación afirmativa de dejar sin efecto el "hold" de las cuentas de depósito según los estatutos federales y el *Protocolo de embargos* adoptado por la OAT. Arguyó que de haberse negado a liberar el "hold" de las cuentas de depósito estaría en incumplimiento con la Sección 362 del Código de Quiebras, *supra.*

El 23 de septiembre de 2020, el Tribunal de Apelaciones notificó una *Sentencia* que modificó la *Resolución* del foro primario.[27] En primer lugar, determinó que procedía la expedición del recurso de *certiorari* conforme la Regla 40 de su Reglamento, 4 LPRA Ap. XXII.[28] **Ello, por entender que no hacerlo conllevaría un fracaso a la justicia.**

El foro apelativo intermedio determinó que los fondos depositados en Oriental Bank no formaban parte del caudal del demandado, ya que estaban congelados por un "hold" debido a la orden de embargo. Por consiguiente, determinó que Oriental Bank debió consultar con la Corte de Quiebras o, en la alternativa, con el Síndico. Así, concluyó que Oriental Bank incumplió con la orden del foro primario y por ello, ordenó al Tribunal de Primera Instancia a imponer sanciones

---

[26] *Alegato en oposición a expedición de recurso*, Apéndice de *Petición de certiorari*, pág. 150.

[27] *Sentencia* del Tribunal de Apelaciones, Apéndice de *Petición de certiorari*, págs. 1-22.

[28] Íd., pág. 19.

a Oriental Bank por desacatar la orden de congelar los

fondos. En lo pertinente, razonó que:

> Ahora bien, en este punto es preciso interrogar ¿cuál es el efecto de dicha paralización sobre la suma de $44,920.00 ya congelada, debido al proceso de embargo? ¿A caso se convirtió en parte del caudal de quiebra o tras su congelación dejó de ser un activo de los codemandados?
>
> Según examináramos, con la radicación de la petición de quiebra se crea inmediatamente un caudal de quiebra el cual incluye todo interés propietario, legal o equitativo, que le pertenezca al deudor al comienzo del procedimiento de quiebra. Desde entonces, el referido caudal queda bajo el control de la Corte de Quiebras y en particular del síndico, quién en adelante se convierte en su representante. Considerando lo anterior, resolvemos que, al momento de radicarse la quiebra la suma de $44,920.00 ya no era un activo perteneciente a los codemandados, muestra de ello es que debido al *hold* impuesto por Scotiabank, dichos fondos ya no estaban a su disposición.
>
> Scotiabank alegó en su recurso que ante la radicación de la quiebra no tenía otra alternativa que liberar el *hold* impuesto desde el 21 de junio de 2019, para evitar la violación al Código de Quiebras, exponiéndose a responder por daños. Se equivoca. **En vista de que, con la petición de quiebra el TPI perdió jurisdicción sobre el caso, antes de retirar el *hold* que por razón del embargo ya operaba sobre las cuentas de los codemandados, Scotiabank venía obligado a consultar con la Corte de Quiebras su proceder.** Esa es la alternativa que falló en considerar. **Cabe señalar que, de Scotiabank haber optado por consultar con el síndico antes de liberar los fondos, no habría causado daños al interés propietario de los codemandados, toda vez que al momento de radicarse la quiebra los fondos ya estaban congelados y como tal fuera de su alcance.** En mérito de lo anterior, resolvemos que el tercer error se cometió. Por cuanto el TPI incidió al dar por cumplida la orden de mostrar causa sin imponer sanciones a Scotiabank por desacatar la *Orden* emitida el 3 de abril de 2018.
>
> **Ahora bien, no siendo Scotiabank parte en el caso de epígrafe, el TPI estaba limitado a imponer**

**sanciones** solo por el desacato a la *Orden* mencionada en virtud de la Regla 56.8 de Procedimiento Civil, *supra*. **No obstante, BPPR puede continuar el procedimiento de ejecución de sentencia en contra de los codemandados o, de entenderlo necesario, instar una reclamación independiente contra Scotiabank.** (Énfasis nuestro).[29]

El 5 de octubre de 2020, Oriental Bank solicitó reconsideración. Asimismo, BPPR presentó su oposición.[30] Tras examinar ambas mociones, el foro apelativo intermedio notificó una *Resolución* que declaró "no ha lugar" la *Moción para solicitar reconsideración* de Oriental Bank.[31]

En desacuerdo, Oriental Bank presentó un recurso de *certiorari* ante este Tribunal y señaló lo siguiente:

> Erró el Tribunal de Apelaciones al determinar que, una vez una persona presenta una Petición de Quiebra al amparo del Capítulo 13, el Banco que custodia unos fondos pertenecientes a esa persona y que se encuentran en trámite de ser embargados está obligado a ponerlos a disposición del Síndico y no a devolverlos a la persona, quien, bajo el Capítulo 13 del Código de Quiebras, se reputa deudor en posesión de tales activos.[32]

Por su parte, el BBPR presentó su *Alegato de réplica a solicitud de certiorari*. En resumen, alegó que el embargo se realizó antes de la presentación de la petición de quiebra y sostuvo que Oriental Bank liberó el dinero embargado

---

[29] Íd., págs. 21-22.

[30] *Oposición a reconsideración*, Apéndice de *Petición de certiorari*, pág. 36.

[31] *Resolución*, Apéndice de *Petición de certiorari*, pág. 42.

[32] Luego, Oriental Bank presentó una *Moción informativa con relación a determinación del Tribunal Supremo de Estados Unidos* mediante la cual reconoció que la controversia no fue resuelta por el foro federal y planteó que se trataba de un asunto de campo ocupado.

pasados los 3 días establecidos en el *Protocolo de embargos*. Así, arguyó que el día 4 Oriental Bank debió consignar el dinero en el foro primario en lugar de liberar los fondos para beneficiar a su cliente. Concluyó que la determinación del Tribunal de Apelaciones fue conforme a derecho, por entender que la conducta del Oficial de Oriental Bank que liberó los bienes embargados durante la ejecución de sentencia constituyó un desacato a lo ordenado por el Tribunal de Primera Instancia. Finalmente, solicitó que se confirme al Tribunal de Apelaciones e imponga honorarios por temeridad a Oriental Bank, ya que incumplió con la orden de embargo del foro primario y la paralización automática de la Corte de Quiebras.

Con el beneficio de la comparecencia de las partes, resolvemos.

## II

### A. Paralización automática

La Sección 362 del Código de Quiebras, 11 USC sec. 362, establece la paralización automática (automatic stay) de todo procedimiento o actuación contra una persona o entidad que presenta una petición de quiebra ante la Corte de Quiebras. De esta forma, se paraliza automáticamente todo proceso judicial o extrajudicial de cobro de dinero en contra del deudor, incluso puede también impedir la ejecución de sentencias obtenidas previo al inicio del caso o detener la

creación, perfección o ejecución de un gravamen anterior a la interposición de la quiebra.[33]

Por otro lado, la paralización automática bajo el Código de Quiebras tiene un efecto inmediato con la mera presentación que no requiere una notificación formal para que surta efecto y a su vez, provoca que los tribunales estatales queden privados de jurisdicción automáticamente.[34]

**B. Procedimientos postsentencia**

El procedimiento de ejecución de sentencia está regulado por la Regla 51.1 de Procedimiento Civil, 32 LPRA Ap. V, al disponerse que la parte a cuyo favor se dictó una sentencia puede ejecutarla dentro de los cinco (5) años de ésta ser firme. Cónsono con ello, respecto a los pleitos de cobro de dinero, la Regla 51.2 de Procedimiento Civil, *supra*, establece que:

> El procedimiento para ejecutar una sentencia u orden para el pago de una suma de dinero y para recobrar las costas concedidas por el tribunal será mediante un mandamiento de ejecución. El mandamiento de ejecución especificará los términos de la sentencia y la cantidad pendiente de pago. Todo mandamiento de ejecución será dirigido al alguacil o alguacila para ser entregado a la parte interesada. En todo caso de ejecución, incluso aquellos en los que se realice una venta judicial, el alguacil o alguacila entregará al Secretario o Secretaria el mandamiento debidamente diligenciado y cualquier sobrante que tenga en su poder dentro del término de quince (15) días a partir de la fecha en que se realice la ejecución. [...]. Íd.

---

[33] *Peerles Oil v. Hnos. Torres Pérez*, 186 DPR 239, 255-256 (2012); *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 490-491 (2010).

[34] *Peerles Oil v. Hnos. Torres Pérez*, *supra*; *Marrero Rosado v. Marrero Rosado*, *supra*. Véase, también, *Morales v. Clínica Femenina de P.R.*, 135 DPR 810, 820 esc. 5 (1994) (Sentencia).

La regla citada establece que el procedimiento de ejecución de sentencia en casos de cobro de dinero se divide en dos etapas: en la primera, el promovente de la ejecución procura obtener el mandamiento de ejecución de la secretaría del tribunal y en la segunda, gestiona su diligenciamiento por el alguacil.[35]

De esta forma, una vez se emite el mandamiento dirigido al alguacil, éste lo diligencia incautándose de fondos pertenecientes al deudor por sentencia o embargando sus bienes muebles o inmuebles. Los fondos o bienes que serán objeto de la ejecución le son señalados al alguacil por el promovente mediante un escrito denominado *Señalamiento de Bienes.*[36]

Por otro lado, en cuanto al embargo, la Regla 56 de Procedimiento Civil, *supra*, regula los procedimientos que un demandante tiene a su alcance para asegurar la efectividad de la sentencia que ha obtenido a su favor o que anticipa obtener. La Regla 56.1 de Procedimiento Civil, *supra*, le otorga discreción al tribunal para conceder o denegar tal remedio o medida cautelar. En lo pertinente, establece:

> En todo pleito antes o después de sentencia, por moción del reclamante, el tribunal podrá dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia. El tribunal podrá conceder el embargo, el embargo de fondos en posesión de un tercero, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una

---

[35] *Komodidad Dist. v. SLG Sánchez, Doe*, 180 DPR 167, 173-174 (2010) (Sentencia).

[36] R. Hernández Colón, *Práctica Jurídica de Puerto Rico Derecho Procesal Civil*, 6ta ed., LexisNexis de Puerto Rico, 2017, pág. 637.

orden para hacer o desistir de hacer cualesquiera actos específicos, o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso. En todo caso en que se solicite un remedio provisional, el tribunal considerará los intereses de todas las partes y dispondrá según requiera la justicia sustancial. Íd.

El embargo se define como "la interdicción de bienes del demandado por mandamiento judicial para responder de la sentencia".[37] Asimismo, el embargo puede efectuarse tanto en cuanto a bienes inmuebles como a bienes muebles, aunque estos estén en posesión de un tercero, siempre que pertenezcan al demandado.[38]

En cuanto a los bienes muebles, la Regla 56.4 de Procedimiento Civil, *supra*, establece que "los bienes muebles se embargan, incautándose de estos y dejándolos en poder de un depositario nombrado por el tribunal".[39] Así, tras ordenar cualquier medio de aseguramiento de sentencia, el tribunal podrá compeler su cumplimiento mediante su poder de desacato civil conforme a lo establecido en la Regla 56.8 de Procedimiento Civil, *supra*.

## C. Protocolo para facilitar el trámite de embargos de cuentas bancarias y adopción del formulario OAT-1670 Recibo

En cuanto al procedimiento de embargo, el 14 de junio de 2012, la OAT emitió la *Circular Núm. 34* para establecer el *Protocolo para facilitar el trámite de embargos de cuentas*

---

[37] Hernández Colón, *op. cit.*, pág. 188 (citando a *Alum Torres v. Campos del Toro,* 89 DPR 305, 321 (1963)).

[38] Íd.

[39] C. Díaz Olivo, *Litigación Civil*, Puerto Rico, 2da ed., Editorial AlmaForte, 2018, pág. 232.

*bancarias y adopción del formulario OAT-1670 Recibo*
(Protocolo de embargos) para facilitar el trámite de embargos
de cuentas bancarias.

Entre otros asuntos, el protocolo dispone que el
trámite inicial del embargo con la institución bancaria se
realiza a través de la Oficina del Alguacil Regional de la
Región Judicial de San Juan. Allí, el alguacil designado
entrega los documentos del embargo al representante
autorizado en la Oficina Central que la institución bancaria
determine. Como resultado del diligenciamiento de la orden
de embargo, la institución bancaria expide un *Recibo* mediante
el Formulario OAT-1670.

Luego, la institución bancaria realiza una evaluación
de los documentos de embargo dentro de un término no menor
de tres días. Tras finalizar la evaluación, si concluye que
no hay impedimento para el desembolso de los fondos, remite
el cheque directamente a la sucursal de la institución
bancaria ubicada en la Región Judicial en donde fue emitido
el embargo para ser recogido por el alguacil designado para
ello. Específicamente, el Formulario OAT 1670 (*Recibo*)
establece lo siguiente sobre el trámite esbozado:

> A. _____ (Nombre del Banco)
> recibe la Orden sujeto a su obligación de
> verificar si en relación a la(s) cuenta(s) de
> depósito en cuestión existen, entre otros:
> transacciones en tránsito, embargos previos,
> sean de carácter gubernamental o privados;
> fondos protegidos de embargos a tenor con las
> leyes y reglamentos federales o locales
> aplicables; y la existencia de garantías
> mobiliarias y/o derechos de compensación que
> tengan carácter prioritario, entre otros.

**B. El recibo de la Orden no constituye una representación ni aceptación por dicha institución financiera de que en la(s) cuenta(s) de depósito en cuestión hay fondos disponibles o de que, de haber fondos disponibles, éstos serán congelados y/o desembolsados en las cantidades dispuestas en la Orden, si alguna se especificara, al momento del recibo de la misma.**

**C. _____ (Nombre del Banco) habrá de responder a la Orden en un plazo no menor de tres (3) días laborables contados a partir del día siguiente al recibo de la Orden. Dicho plazo podrá ser extendido por causas justificadas. Se remitirá el cheque correspondiente a la sucursal u oficina de esta institución financiera ubicada** en **_____**, para ser recogido allí por el (la) Alguacil designado(a) para estos propósitos. (Énfasis suplido).[40]

**D. Manejo del caso**

"El efectivo funcionamiento de nuestro sistema judicial y la rápida disposición de los asuntos litigiosos requieren que los jueces de instancia tengan gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales".[41] Ello, "para aplicar correctivos apropiados en la forma y manera que su buen juicio les indique".[42] De esta forma, el Tribunal de Primera Instancia tiene amplia discreción sobre el manejo de los casos que se ventilan ante sí.[43]

---

[40] Oficina de Administración de los Tribunales, *Protocolo para facilitar el trámite de embargos de cuentas bancarias y adopción del formulario OAT-1670 Recibo*, Circular Núm. 34, 14 de junio de 2012.

[41] *In re Collazo I*, 159 DPR 141, 150 (2003) (citando a *Pueblo v. Vega, Jiménez*, 121 DPR 282, 287 (1988)).

[42] *In re Collazo I*, *supra* (citando a *Ortiz Rivera v. Agostini*, 92 DPR 187, 193-194 (1965)).

[43] *Vives Vázquez v. ELA*, 142 DPR 117, 141 (1996).

En *Mejías v. Carrasquillo*, 185 DPR 288, 306-307 (2012), este Tribunal expresó que:

> La deferencia al juicio y a la discreción del foro sentenciador está fundamentada en el principio de que los foros apelativos no pueden pretender conducir ni manejar el trámite ordinario de los casos que se ventilan ante el Tribunal de Primera Instancia. Como es harto sabido, dicho foro es el que mejor conoce las particularidades del caso y quien está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una disposición final.

Cónsono con lo anterior, la discreción se fundamenta también en el contacto con los litigantes y la prueba que se haya presentado.[44]

**E. Discreción**

Como regla general, los foros apelativos no intervendrán en la discreción de los foros primarios a no ser que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción.[45] Específicamente, la discreción ha de ceder en las circunstancias en las que se configura: un craso abuso de discreción o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa

---

[44] *Citibank v. ACBI et al.*, 200 DPR 724, 736 (2018).

[45] *VS PR, LLC v. Drift-Wind, Inc.*, 207 DPR 253, 273 (2021); *Umpierre Matos v. Juelle, Mejía*, 203 DPR 254, 276 (2019); *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018).

evitaría un perjuicio sustancial a la parte afectada por su determinación.[46]

En lo pertinente, la discreción judicial se ha definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión Justiciera".[47] Así, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho.[48] En otras palabras, la discreción no opera en un vacío y tampoco puede ser en "función al antojo o voluntad de uno, sin tasa ni limitación alguna".[49] De esta forma, el ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad.[50]

Por último, hemos delimitado las instancias en las que un tribunal abusa de su discreción de la siguiente manera:

> [C]uando no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; Cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o cuando, […] [tras] considerar y tomar en cuenta todos los hechos materiales e importantes y

---

[46] *Cruz Flores v. Hospital Ryder Memorial Inc.*, 210 DPR 465, 497 (2022); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[47] *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 2023 TSPR 65 (2023); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).

[48] *Rivera Gómez v. Arcos Dorados Puerto Rico*, supra; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013).

[49] *SLG Zapata-Rivera y. J.F. Montalvo*, supra (citando a *Santa Aponte v. Srio. del Senado*, 105 DPR 750, 770 (1977)).

[50] *VS PR, LLC v. Drift -Wind*, supra, pág. 272.

descartar los irrelevantes, el juez los sopesa y calibra livianamente.[51]

## F. Regla 40 del Reglamento del Tribunal de Apelaciones

La controversia presentada ante la consideración del Tribunal de Apelaciones versa sobre un asunto postsentencia. En vista de ello, el recurso de *certiorari* es el mecanismo adecuado para solicitar la revisión conforme a lo resuelto expresamente en *IG Builders et al. v. BBVAPR*, 185 DPR 307, 339 (2012).[52] Allí, este Tribunal señaló al respecto que "por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cualifica para el recurso de apelación provisto para dictámenes judiciales finales".[53]

De imponerse las limitaciones de la Regla 52.1, *supra*, a la revisión de dictámenes postsentencia, inevitablemente quedarían sin posibilidad alguna de revisión apelativa.[54] Allí, este Tribunal expresó que la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, adquiere mayor importancia en casos como el de epígrafe, en los que no están disponibles métodos alternos para asegurar la revisión de la determinación cuestionada, pues se corre el riesgo "de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en

---

[51] *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo*, *supra*.

[52] En *IG Builders et al. v. BBVAPR*, *supra*, entre otros asuntos, evaluamos una solicitud para intervenir en un procedimiento postsentencia e impedir una orden de embargo de ciertos fondos depositados judicialmente.

[53] *IG Builders et al. v. BBVAPR*, *supra*, pág. 339.

[54] Íd.

el proceso, tal como lo es la ejecución de sentencia".[55] Por consiguiente, para determinar si procede la expedición de un recurso discrecional de *certiorari* en los que se recurre de determinaciones postsentencia es preciso acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

"La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos".[56] Sin embargo, la discreción no opera en el vacío y en ausencia de parámetros que la encaminen, sino que el foro apelativo cuenta con los criterios enumerados en dicha Regla para asistirlo y determinar si en un caso en particular procede que se expida el auto discrecional de *certiorari*.[57]

Conforme a lo anterior, en un procedimiento postsentencia, el Tribunal de Apelaciones deberá evaluar la procedencia de la expedición de un recurso de *certiorari* a la luz de los criterios enumerados en la Regla 40 de su Reglamento, *supra*, que son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales,

---

[55] Íd.

[56] *IG Builders et al. v. BBVAPR, supra*, pág. 338.

[57] *IG Builders et al. v. BBVAPR, supra*; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011).

los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
**(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.**
(Énfasis nuestro). Íd.

## III

**De entrada, y como señalamos al inicio, la controversia ante nuestra consideración se suscitó sobre una sanción en etapa postsentencia durante la ejecución de sentencia del caso de epígrafe, entre BPPR, y Oriental Bank, que es una institución bancaria que no es parte en el pleito.**

**Así, concluimos que el foro apelativo intermedio erró y abusó de su discreción al entrar a evaluar y revocar la discreción del foro primario. Veamos.**

Por un lado, debemos aclarar que conforme a lo establecido en *IG Builders et al. v. BBVAPR*, *supra*, la intervención del Tribunal de Apelaciones se debe limitar a considerar si procede la expedición de un recurso discrecional de *certiorari* sobre una determinación en un trámite postsentencia al acudir directamente a los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

**En cuanto a los méritos, debemos reiterar que la *Orden de mostrar causa* que es la controversia de este caso solicitaba los fundamentos del incumplimiento de las órdenes sobre la ejecución de sentencia. Fundamentos que Oriental**

**Bank presentó y el Tribunal de Primera Instancia evaluó y en el ejercicio de su discreción denegó imponer una sanción por su actuación. Eso era todo lo que tenía ante su consideración el Tribunal de Primera Instancia, y fue eso lo que se elevó ante la consideración del Tribunal de Apelaciones: Si el Tribunal de Primera Instancia se excedió en su discreción al <u>no</u> imponer una sanción a una institución que ni siquiera era parte en el caso. Por ello, tras examinar el trámite procesal y el derecho esbozado, determinamos que el foro primario actuó dentro de los parámetros de su sana discreción.**

En lo relacionado con el embargo, el término de 3 días para la consignación del dinero en el Tribunal se encuentra establecido en el *Protocolo de embargos* emitido por la OAT el 14 de junio de 2012. El referido protocolo y el contenido del Formulario OAT-1670 establecen claramente que durante un término no menor de 3 días -contados a partir del día siguiente al recibo de la Orden- se estarán evaluando los documentos de embargo para determinar si sobre las cuentas existen otras transacciones pendientes antes de proceder a remitir el cheque correspondiente para ser recogido por el alguacil.[58] Aunque tal protocolo es meramente directivo para el tribunal, constituye la directriz a seguir por la institución bancaria que trabajará el cumplimiento de la orden de embargo y que emite el *Recibo* mediante el Formulario

---

[58] Cabe resaltar que el *Protocolo de embargos* aplicará a las instituciones bancarias que forman parte de la Asociación de Bancos de Puerto Rico. Con relación a las demás instituciones financieras -incluyendo a las Cooperativas- aplicará lo establecido en el *Manual de Normas y Procedimientos para los (las) Alguaciles del Tribunal General de Justicia*, págs. 209-210.

OAT-1670. De esta forma, el embargo se perfecciona con la consignación del dinero en el tribunal.[59]

Por otro lado, según establece el derecho esbozado, no existe duda de que la petición de quiebra presentada en la Corte de Quiebras provocó una paralización automática sobre la ejecución de sentencia de cobro de dinero y la perfección de embargo por parte de BPPR sobre las cuentas bancarias objeto de este caso. La petición de quiebra en ese momento se convirtió en un impedimento que surgió con la mera interposición.

En ese momento, la orden de embargo sobre la cuenta emitida por el foro primario perdió vigencia. Por ello, si Oriental Bank continuaba con el trámite de la consignación para cumplir con la ejecución de sentencia incurriría en una violación de la paralización automática ante la presentación de la petición de quiebra.

Conforme a lo anterior, el foro primario emitió una determinación correcta en derecho y conforme al ejercicio de su discreción enmarcado en el criterio de la razonabilidad. Consecuentemente, no procede concluir que Oriental Bank desacató la orden del foro primario ni modificar la determinación e imponer sanciones como lo hizo el foro apelativo intermedio.

El Tribunal de Apelaciones erró al intervenir sobre la imposición de una sanción que incide sobre la discreción del manejo del caso que tiene el foro primario. Claramente, esta

---

[59] Véase, también, Regla 56.4 de Procedimiento Civil, *supra*.

es una determinación de la evaluación de una *Orden de mostrar causa* y una sanción que recae en la discreción como parte del manejo del caso ante su consideración. Conforme al derecho esbozado, como norma general, los tribunales de instancia gozan de amplia discreción para pautar y conducir la tramitación de los procedimientos ante su consideración. Por tal razón, el Tribunal de Apelaciones no debe intervenir en el manejo del caso ante la consideración del Tribunal de Primera Instancia, salvo quedara establecido que el foro primario incurrió en prejuicio, parcialidad, craso abuso de discreción o error en la aplicación de una norma procesal o de derecho sustantivo y cuando la intervención del foro intermedio evite un perjuicio sustancial.

En ausencia de lo anterior, el Tribunal de Apelaciones no tenía fundamentos para intervenir y actuó incorrectamente al expedir el recurso de *certiorari* presentado. Esto, porque no se cumplía con ninguno de los incisos de la Regla 40 del Reglamento de dicho tribunal, *supra*.

Por tanto, queda justificada nuestra intervención con la decisión recurrida para revocar la intervención errada del Tribunal de Apelaciones y a su vez, confirmar la determinación del Tribunal de Primera Instancia que dio por cumplida la *Orden de mostrar causa* sin imponer sanción alguna a Oriental Bank.

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Banco Popular de Puerto Rico<br><br>Recurrida<br><br>v.<br><br>Andrés Gómez Alayón, Nelia López Del Valle y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos<br><br>Oriental Bank<br><br>Peticionario | CC-2021-0045 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 19 de diciembre de 2023.

Por los fundamentos expuestos en la Opinión que antecede la cual se hacer formar parte íntegra de la presente, se revoca la intervención errada del Tribunal de Apelaciones y a su vez, se confirma la determinación del Tribunal de Primera Instancia que dio por cumplida la *Orden de mostrar causa* sin imponer sanción alguna a Oriental Bank.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodriguez disiente y emite las expresiones siguientes:

> No estoy de acuerdo con el proceder de una mayoría de este Tribunal. Opino que no correspondía que Oriental Bank (Oriental) liberara los fondos a la parte demandada. La controversia en el caso ante nos se centra en el hecho de si el embargo sobre los fondos de la parte demandada se perfeccionó o no. Ante esta interrogante, correspondía que Oriental acudiera ante el Tribunal Federal de Quiebras a modo de salvaguardar los potenciales derechos de las partes sobre los fondos. Si bien el asunto

pendiente ante el Tribunal Federal de Quiebras paraliza automáticamente los procesos estatales, no considero que tenga el efecto de deshacer los procesos en curso o ya concluidos. Los fondos en controversia estaban congelados pues ya se había notificado y, hasta cierto punto, ejecutado el embargo.

Estimo, además, que nada obligaba a Oriental a entregarle los fondos a la parte demandada. Consultar al Tribunal Federal de Quiebras, no solo era lo jurídicamente correcto, sino que hubiera redundado en la protección de los derechos y las obligaciones de las partes. Sobre este particular, basta con recurrir a la casuística federal en materia de derecho de quiebras. En específico, en Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 21 (1995), la Corte Suprema Federal determinó que, ante una controversia similar a la que nos ocupa, la institución financiera no estaba vedada de retener los fondos:

> Respondent's reliance on these provisions rests on the false premise that petitioner's administrative hold took something from respondent, or exercised dominion over property that belonged to respondent. That view of things might be arguable if a bank account consisted of money belonging to the depositor and held by the bank. In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor, and petitioner's temporary refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise. In any event, we will not give § 362(a)(3) or § 362(a)(6) an interpretation that would proscribe what § 542(b)'s "except[ion]" and § 553(a)'s general rule were plainly intended to permit: the temporary refusal of a creditor to pay a debt that is subject to setoff against a debt owed by the bankrupt. (Cita depurada). Íd.

En igual tono, en <u>City of Chicago, Illinois v. Fulton</u>, 592 U.S. 154 (2021), la Corte Suprema Federal determinó que la mera retención de la propiedad, tras la presentación de una petición de quiebras, no constituye una violación a la Sec. 362 (a) (3) del Capítulo 13 del Código de Quiebras, 11 U.S.C.A. sec. 362 (a) (3).

En el caso ante nos, la decisión de liberar los fondos no recaía sobre Oriental. Al confrontarse con la interrogante sobre cuál era el proceder adecuado, los precedentes aconsejan que se recurra al Tribunal Federal de Quiebras para aclararla, habida cuenta de la preminencia del derecho federal en este tema.

Debido a que con nuestra determinación se valida un curso de acción contrario a derecho, disiento respetuosamente.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo