ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| CONSEJO DE TITULARES DEL CONDOMINIO PUERTA DEL PARQUE<br><br>Recurrido<br><br>v.<br><br>HACIENDA SAN JOSÉ HOMEOWNERS ASSOCIATION, INC. Y OTROS<br><br>Peticionario | KLCE202400248 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Caso Número: CG2021CV02406<br><br>Sobre:<br><br>Cobro de dinero-ordinario y otros |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores

Rivera Marchand, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 19 de marzo de 2024.

Comparece Hacienda San José Homeowners Association Inc. (HSJ o peticionaria) y solicita que revoquemos la *Resolución* notificada el 22 de enero de 2024 por el Tribunal de Primera Instancia, Sala de Caguas (TPI o foro primario). En esta, el foro primario autorizó cierto descubrimiento de prueba.

Por los fundamentos que exponemos a continuación, denegamos la expedición del auto de *certiorari.*

**I.**

Conforme surge del expediente, el Condominio Puerta del Parque (Condominio) se compone de 88 apartamentos residenciales sometidos al régimen de propiedad horizontal y forma parte del complejo maestro Hacienda San José Homeowners Association, Inc. (HSJ), sito en el Municipio de Caguas. En dicho complejo se encuentran el Condominio y varias secciones residenciales de urbanizaciones (Asomante, Cautiva, La Estancia, Las Nubes, San Juanera, Sureña y Villa Caribe).

El Consejo de Titulares del Condominio (Consejo o parte recurrida) representada por la Presidenta de la Junta de Directores, la Sra. Petra Milagros Santiago (Sra. Santiago), incoó una *Demanda*[1] en contra de HSJ en la que alega que, desde sus orígenes, los titulares del Condominio pagaban a HSJ una cuota de mantenimiento por apartamento de $135.00 mensuales. Señala que, la referida cuota de mantenimiento era menor a la que pagaban los titulares de las restantes secciones residenciales de HSJ por razón de que, en esa época, no recibían los mismos servicios que las demás secciones de HSJ. Aclaró que, lo antes cambió luego de que, durante el mes de septiembre de 2013, la Junta de Directores de HSJ acordó que los titulares del Condominio comenzarían a pagar una cuota igual a la que pagaban los titulares de las restantes secciones residenciales.

En su reclamación expresó que, este aumento se acordó con el compromiso de que HSJ estaría haciéndose cargo del mantenimiento del *tele-entry* y de los elementos, áreas y jardín de la entrada principal del Condominio. Indicó además que, el 7 de abril de 2016, la Junta de Directores de HSJ aprobó el pago del consumo de energía eléctrica de las áreas comunes del Condominio hasta un máximo de $300.00 mensuales. Añadió que, el 20 de agosto de 2019, también se aprobó la aportación de $600.00 mensuales para el pago del mantenimiento de áreas verdes del Condominio.

No obstante, conforme a las alegaciones, el 26 de septiembre de 2019, la Junta de Directores de HSJ aprobó eliminar las referidas aportaciones sin la presencia del representante del Condominio ante la Junta de HSJ. Alegó que, el Condominio advino en conocimiento de lo antes mencionado, mediante una carta, con fecha de 30 de septiembre de 2019, firmada por el Presidente de HSJ, recibida el 4

---

[1] Apéndice, págs. 132-156.

de octubre de 2019. Según su apreciación, dicho comunicado no contenía las razones, ni explicación alguna para la referida cancelación de las mencionadas obligaciones.

En reacción, (desde el 27 de octubre de 2019 hasta la fecha de la presentación de la demanda), la Sra. Santiago envió cartas solicitando reuniones, información, documentos y remedios en aras de lograr que se restituyesen las obligaciones asumidas por parte de HSJ con relación al Condominio. Explicó que, a pesar de los múltiples intentos, HSJ no respondió y tampoco suministró la información y la documentación requerida por la Sra. Santiago en representación del Consejo.[2]

En fin, sostuvo que, los titulares del Condominio pagan la misma cuota que los restantes titulares de HSJ y reciben menos beneficios y servicios. Por ello y, ante la falta de atención a sus reiterados requerimientos, entabló la demanda de epígrafe, en la cual, incluyó siete causas de acción a saber: por enriquecimiento injusto; incumplimiento de obligaciones extracontractuales, contractuales y sentencia declaratoria; nulidad de disposiciones reglamentarias; interdicto permanente; cobro de dinero; nulidad de la composición de HSJ y de su Junta de Directores; trato desigual e inequitativo, más temeridad.

---

[2] Apéndice, págs. 137-138. Minuta de la reunión de la Junta de HSJ del 26 de septiembre de 2019. Copia de cualquier otra minuta de reunión de la Junta de HSJ en la cual se haya considerado o discutido algún asunto relacionado al Condominio Puerta del Parque. Desglose de los gastos de electricidad para los años 2018 al presente. Desglose de los gastos de mantenimiento de áreas verdes de HSJ y alrededores de cada una de las secciones de Hacienda San José para los años 2018 al presente. Presupuesto asignado para cubrir gastos de cada una de las secciones de HSJ para los años 2018 al presente. Copia de los estados financieros de HSJ para los años 2018 al presente. **Copia de los planos (master plans) de HSJ** y cualquier otro relacionado al complejo HSJ y/o las secciones comprendidas dentro de HSJ. Copia de los contratos con todos los suplidores de servicios recurrentes de HSJ, para los años 2018 al presente, con cualquier enmienda o renovación de estos. Lista y contrato de los proyectos de mejoras y proyectos especiales en las secciones que comprenden HSJ. Copia de cualquier reglamento y escritura (incluyendo enmiendas o modificaciones a las mismas) de HSJ y/o de cualquiera de las secciones de vivienda de HSJ (excluyendo la escritura matriz y reglamento de Puerta del Parque y la Escritura #335 del 25 de septiembre de 2000 ante la Notario, Estela I. Valles Acosta, titulada **Escritura Estableciendo Asociación Matriz Declaración de Convenios y Restricciones Desarrollo Hacienda San José**, a no ser que la misma se haya modificado o enmendado, en cuyo caso se le solicita copia de dicha enmienda o modificación). Copia de los Artículos de Incorporación y sus enmiendas de HSJ.

Luego de acreditar su alegación responsiva,[3] HSJ solicitó la desestimación de la totalidad de la reclamación por falta de legitimación activa "a la luz de la jurisprudencia interpretativa de servidumbre en equidad, la Escritura Núm. 335 titulada Escritura Estableciendo Asociación Matriz Declaración de Convenio y Restricciones Desarrollo Hacienda San José y el Artículo 20 de la Ley de Condominio". A la antes añadió que, los afectados por los remedios solicitados (particularmente en la sexta causa de acción) son los titulares de las demás secciones del Complejo, por lo que, solicitó la desestimación de la causa, ante la ausencia y falta de acumulación de estos, como partes indispensables.[4]

Al reaccionar a la moción dispositiva, mediante una *Solicitud Para Que Se Declare No Ha Lugar la Solicitud de Desestimación y/o se Posponga Su Resolución*, radicada el 27 de diciembre de 2023, el Consejo destacó que, con anterioridad, el foro primario había acogido la referida moción de desestimación como una moción de sentencia sumaria, reconociendo así que "la demandante podría necesitar realizar/concluir descubrimiento de prueba para estar en posición de responder a dicha moción".[5] Por ello, suplicó que se pospusiera la adjudicación del petitorio sumario hasta tanto se finalizara el descubrimiento de prueba autorizado.

Evaluado lo anterior el TPI, mediante una *Orden* notificada el 4 de enero de 2024, dispuso lo siguiente:

> El Tribunal está en disposición de posponer resolver la solicitud de desestimación radicada por la parte demandada, la cual en realidad es una moción de sentencia sumaria, para dar oportunidad a la parte demandante a obtener aquella prueba que sea necesaria para estar en posición de presentar una oposición fundamentada a la misma. No obstante, el descubrimiento de prueba que pueda restar por realizar para radicar la moción en oposición tiene que guardar relación con los fundamentos por los cuales se ha solicitado la desestimación de las reclamaciones. Examinada la moción de desestimación, la misma está fundamentada en que alegadamente el Consejo de Titulares del Condominio Puerta

---

[3] Apéndice, págs.157-163.
[4] Apéndice, págs. 13-35.
[5] Entrada núm. 123 en el expediente electrónico del portal del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Poder Judicial.

del Parque no es titular de las unidades residenciales, como tampoco tiene obligación de contribuir al pago de cuotas de mantenimiento. No siendo titular de una propiedad gravada y sujeta a la servidumbre en equidad, no posee obligaciones, ni derechos que reclamar bajo la misma. En consecuencia, arguye la parte demandada, el Consejo de Titulares del Condominio Puerta del Parque carece de legitimación activa para instar las reclamaciones del caso de marras. Además, que los titulares de todas las secciones que componen el complejo de viviendas Hacienda San José son parte indispensable en este proceso, por cuanto, según alega la parte demandada, sus derechos pudieran verse afectados por las resultas de este pleito. A tenor con dichas alegaciones, indique la parte demandante, con especificidad y claridad, qué descubrimiento de prueba necesita realizar para hacer frente a dichas alegaciones. Tenga 15 días para cumplir.[6]

En cumplimiento, el Consejo -mediante moción interpuesta el 19 de enero de 2024- solicitó el descubrimiento de dos documentos y autorización para realizar deposiciones a los miembros de la Junta de Directores de HSJ. A pesar de no dar paso a las deposiciones solicitadas, mediante otra *Orden* emitida el 22 de enero de 2024, el TPI dispuso lo siguiente:[7]

A los fines de brindar oportunidad a la parte demandante para oponerse a la solicitud de desestimación presentada por la parte demandada, se concede a la parte demandante 60 días para realizar descubrimiento de prueba con el fin de obtener copia de los siguientes documentos: (**1) Plano Maestro, sus enmiendas, y el detalle de las adiciones autorizadas, (2) Registro de Declaración de Convenio Suplementario y Restricciones, y declaraciones mencionadas en escritura matriz.** Luego de ello tendrá 30 días para presentar oposición fundamentada a la solicitud de desestimación. En cuanto a deponer cada uno de los miembros de la Junta de Directores y oficiales de HSJHOA que estaban en funciones para septiembre de 2019, No Ha Lugar. (Énfasis nuestro).

Oportunamente, HSJ interpuso una solicitud de reconsideración la cual fue denegada por el foro primario.[8] Inconforme aún, HSJ acude ante esta Curia y señala los siguientes errores:

Erró el TPI al permitir el descubrimiento de prueba conforme ordenado en la Resolución emitida el 22 de enero de 2024, entrada 143 de SUMAC, cuando regla, adición, declaración y/o restricción a la Escritura Matriz de la Hacienda San Jos[é] que no esté inscrita en el Registro, no tiene validez o eficacia legal por lo que es impertinente.

---

[6] Apéndice, págs. 11-12.
[7] Apéndice, pág. 2.
[8] Apéndice, pág. 131.

> Err[ó] el TPI al permitir el descubrimiento de prueba cuando la definición de Dueño o Miembro bajo la Escritura Matriz de la Hacienda San Jos[é] es el dueño en pleno dominio de cualquier solar o unidad de vivienda de la Hacienda San Jos[é], definición que surge del folio Karibe y para resolver la solicitud de desestimación radicada por la parte demandada recurrente lo único necesario es la aplicación de dicha definición. Cualquier enmienda, declaración y/o adición de existir que no esté inscrita, no tiene validez o eficacia.

> Err[ó] el TPI al no resolver la solicitud de desestimación por falta de parte indispensable cuando dicho asunto solo requiere examinar la causa de acción sexta de la demanda, mediante la cual se solicita anular disposiciones específicas de la Escritura Matriz, lo cual afectaría derechos reales inscritos en los que confiaron todos los titulares de la Hacienda San José.

El Consejo presentó un *Memorando en oposición a expedición de auto de certiorari,* por lo que, con el beneficio de las comparecencias de las partes, procedemos a resolver.

**II.**

**A. *Certiorari***

El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, 2023 TSPR 65, resuelto el 8 de mayo de 2023; *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Es norma reiterada que, una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones mediante auto de *certiorari. Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, supra. A diferencia del recurso de apelación, el tribunal revisor tiene la facultad de expedir el auto de *certiorari* de manera discrecional. *Torres González v. Zaragoza Meléndez,* supra.

Por su parte, la Regla 52.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita la facultad que tiene el foro apelativo intermedio para revisar las resoluciones u órdenes interlocutorias que emite el foro primario. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994 (2021). Esa regla establece que el

recurso de *certiorari* solo se expedirá cuando se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo. *Torres González v. Zaragoza Meléndez,* supra.

No obstante, la citada Regla 52.1, también dispone que el tribunal apelativo, en su ejercicio discrecional y por excepción, podrá expedir un recurso de *certiorari* cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier otra situación en la que esperar a una apelación constituiría un fracaso irremediable a la justicia. *Íd.* El delimitar la revisión a instancias específicas tiene como propósito evitar las "dilaciones innecesarias, el fraccionamiento de causas y las intervenciones a destiempo." *Íd.*; Véase, además, *Scotiabank v. ZAF Corp., et al.*, 202 DPR 478, 486-487 (2019).

Por otro lado, el examen que hace este Tribunal previo a expedir un auto de *certiorari* no se da en el vacío ni en ausencia de otros parámetros. *Torres González v. Zaragoza Meléndez,* supra. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari*. *Banco Popular de Puerto Rico v. Gómez Alayón y otros,* 2023 TSPR 145, resuelto el 19 de diciembre de 2023. La citada regla dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en los cuales se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *Banco Popular de Puerto Rico v. Gómez Alayón y otros, supra.*

**III.**

La peticionaria solicita nuestra intervención sobre una determinación del foro primario atinente al manejo del caso y al descubrimiento de unos documentos que, según la demanda, el Consejo infructuosamente requirió de HSJ previo a instar la causa de epígrafe. La peticionaria insta a que ejerzamos nuestra función discrecional y a que dejemos sin efecto el dictamen interlocutorio del TPI, el cual, autorizó la entrega del Plano Maestro y del Registro de Declaración de Convenio Suplementario y Restricciones, según detallamos previamente en el tracto procesal, a favor de la parte recurrida.

Cabe puntualizar que, el foro *a quo* autorizó la entrega de los referidos documentos con el propósito de que el Consejo pueda oponerse a la moción de desestimación de la peticionaria, acogida por el foro *a quo* como una moción de sentencia sumaria, el 21 de noviembre de 2023. Es de notar que, por el contrario, el foro

primario denegó el petitorio relacionado a la toma de deposiciones de los miembros de la Junta de Directores y Oficiales de HSJ.

Es menester resaltar que, la demanda de epígrafe contiene múltiples causas de acción, cada una con remedios particulares. De lo antes nos resulta evidente que, en esta etapa temprana de los procedimientos, el TPI no ha culminado su evaluación y adjudicación de los asuntos pendientes ante sí, conforme lo autorizan nuestras reglas procesales atinentes a la evaluación de mociones dispositivas. Precisamente, el dictamen impugnado pretende poner en posición al Consejo para oponerse a la moción de sentencia sumaria de la peticionaria, con el fin ulterior de que el TPI pueda adjudicar la moción dispositiva.

A la luz de lo esbozado, unido a que la Regla 52.1 de las Reglas de Procedimiento Civil, *supra,* no nos confiere autoridad para expedir un auto de *certiorari* en circunstancias relacionadas a cómo deben conducirse los procedimientos ante el foro primario, no procede nuestra intervención sobre el dictamen recurrido. Añádase a ello que, la peticionaria no nos ha puesto en posición de dictaminar que la entrega de los documentos requeridos le ocasionaría un fracaso a la justicia.

Por los fundamentos antes expuestos y, a tenor de los criterios sobre la expedición de un auto de *certiorari* que establece la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* concluimos que el recurso de epígrafe no presenta un asunto que justifique nuestra intervención, en esta etapa temprana de los procesos, a pocos días de vencer el término de 60 días que concedió el foro primario para la entrega de los documentos requeridos, previo a que la parte recurrida puede oponerse a la moción dispositiva y a que el foro primario pueda evaluarla y adjudicarla propiamente. No surge del expediente ante esta Curia que, el TPI haya errado, abusado de

su discreción o que haya actuado con prejuicio, pasión o parcialidad al ejercer sus facultades.

**IV.**

Por los fundamentos esbozados, denegamos la expedición del auto de *certiorari.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones