Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| EL PUEBLO DE PUERTO RICO  Recurrido  v.  FLOR BENÍTEZ III  Peticionario | KLCE202400224 | *CERTIORARI* Procedente del Tribunal de Primera Instancia, Sala de Aguadilla  Criminal Núm.: A LE2021G0105 (501)  Sobre: Art. 4.B Ley 284 |
|---|---|---|

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Álvarez Esnard, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de marzo de 2024.

Recurre ante nos el Lcdo. Mikael del Valle Rodríguez ("Lcdo. el Valle" o "Peticionario") mediante *Recurso de Certiorari* presentado el 22 de febrero de 2024. Nos solicita que revoquemos la *Resolución* emitida y notificada por el Tribunal de Primera Instancia, Sala de Aguadilla ("foro primario") el 23 de enero de 2024. En el referido dictamen, el foro primario declaró *No Ha Lugar* la *Tercera Moción De Relevo Y Renuncia De Representación Legal* presentada por el Peticionario.

Adelantamos que, por los fundamentos expuestos a continuación, **denegamos** la expedición del auto de *certiorari.*

### I.

El Lcdo. del Valle, quien pertenece al Banco de Abogados y Abogadas de Oficio del Poder Judicial de Puerto Rico, le fue asignada la representación legal del señor Flor Benítez ("señor Benítez" o "representado") el 14 de junio de 2023. El 28 de agosto de 2023 el Lcdo. del Valle presentó *Moción de Relevo y Renuncia de*

*Representación Legal* la cual fue declarada *No Ha Lugar* el 29 de agosto de 2023 y, notificada el día 31 del mismo mes y año. En la aludida moción relató que durante la reunión que sostuvo con el señor Benítez y su madre, discutieron los pormenores del caso, el plan de trabajo y las repercusiones de los cargos que enfrentaba. Destacó además que las conversaciones se tornaron animosas. Alegó que el señor Benítez realizó manifestaciones de forma hostil, las cuales le hicieron entender al Peticionario que el señor Benítez estaba inconforme con su representación legal. El Lcdo. del Valle añadió que su representado se marchó de la reunión sin esta haber culminado. Por todo lo anterior, arguyó que procedía ser relevado del caso, por existir diferencias irreconciliables que impedían una colaboración abogado-cliente, puesto que el señor Benítez había perdido la confianza en su representación legal.

Surge del expediente que el 27 de septiembre de 2023, el foro primario emitió una *Resolución y Orden* donde relevó al Programa de Servicios con Antelación al Juicio ("PSAJ") de la supervisión electrónica del señor Benítez, y en consecuencia ordenó su arresto e ingreso al Complejo Correccional de Ponce. En su reporte, PSAJ relató cómo el señor Benítez se comunicó en varias ocasiones con el Centro de Monitoreo de PSAJ con una "actitud desafiante, hostil [y] apática en menosprecio a las funciones de los agentes".[1] Explicó, además, que en varias ocasiones el señor Benítez incumplió con su responsabilidad de cargar el dispositivo de supervisión electrónica. De igual forma, esbozó en la aludida Resolución y Orden que al llegar los agentes a su residencia, éste se negó de manera hostil y retante a firmar el contrato que evidencia el cambio de grillete.

Posteriormente, el 13 de noviembre de 2023, se llevó a cabo vista de procesabilidad al amparo de la Regla 240 de las de

---

[1] Informe de PSAJ, anejo 5, pág. 12-13 del *Recurso de Certiorari.*

Procedimiento Criminal, 34 LPRA, Ap. II, R. 240. Cabe destacar que ante la incomparecencia del señor Benítez y a preguntas del foro primario, el psiquiatra del Estado, el Dr. William J. Lugo Sánchez ("Dr. Lugo"), esbozó que no pudo evaluar al señor Benítez ya que este no fue puesto a su disposición. Mediante *Resolución y Orden Enmendada* emitida el mismo 13 de noviembre de 2023,[2] el foro primario ordenó se realizara, el 6 de diciembre de 2023, una evaluación psiquiátrica y declaró que los procedimientos se mantendrían paralizados hasta el 11 de diciembre de 2023, día que señaló la celebración de la vista de procesabilidad, al amparo de la Regla 240 de las Reglas de Procedimiento Criminal, *supra.* Cónsono con lo antes expuesto, ese mismo día, el Lcdo. del Valle presentó una *Segunda Moción de Relevo y Renuncia de Representación Legal.* Con este proceder, reiteró que el señor Benítez ya no confiaba en el Peticionario, que la relación entre estos se había lacerado y que la comunicación era ineficiente. Detalló el Peticionario que en la reunión que sostuvo con su representado el 9 de noviembre de 2023, en el Complejo Correccional de Ponce, el señor Benítez fue grosero, amenazante e irrespetuoso. Por otro lado, mencionó que el señor Benítez a la vista de orden de arresto señalada para el 27 de septiembre de 2023, éste compareció asistido por el Lcdo. Acevedo Badillo. Como corolario de lo anterior, argumentó que procedía ser relevado como abogado de oficio del caso, ya que el representado tenía capacidad económica para sufragar una representación legal privada. De igual forma, aclaró que procedía su relevo como representación legal por haber comparecido el señor Benítez asistido por otra representación legal. La aludida moción fue declarada *No Ha Lugar* el 28 de noviembre de 2023, y el foro primario señaló que

---

[2] Anejo 11, pág. 26 del *Recurso de Certiorari.* La *Resolución y Orden* fue enmendada el 14 de diciembre de 2013 con el fin de corregir el nombre del Lcdo. del Valle.

no concedería la misma hasta tanto el señor Benítez notificara una nueva representación legal.

Así las cosas, el 11 de diciembre de 2023 se efectuó nuevamente Vista de Procesabilidad, al amparo de las Reglas de Procedimiento Criminal. En esta ocasión, el señor Benítez se conectó de manera virtual desde el Centro Correccional de Ponce. No empece a ello, abandonó la videoconferencia antes de que culminara la vista. Compareció nuevamente el Dr. Lugo, e informó al foro primario que, a pesar de que el señor Benítez fue puesto a disposición del Peticionario, este se negó a ser evaluado. En vista de lo anterior, el foro primario ordenó por virtud de la *Resolución y Orden* emitida el 11 de diciembre de 2023, que los procedimientos continuaran paralizados, ordenó se realizara el 3 de enero de 2024 la evaluación psiquiátrica del señor Benítez y reseñaló la vista de procesabilidad para el 8 de enero de 2024.

El 8 de enero de 2024, el Dr. Lugo esbozó al foro primario que el señor Benítez se negó nuevamente a ser evaluado. Cónsono con lo anterior, el foro primario emitió *Resolución y Orden* el mismo 8 de enero de 2024, reseñaló la evaluación psiquiátrica y Vista de Procesabilidad.

Así las cosas, el 12 de diciembre de 2014, luego de celebrada la vista de procesabilidad, el foro primario, mediante *Resolución y Orden* emitida el mismo día, acogió la recomendación del Dr. Lugo y ordenó el ingreso del señor Benítez al Hospital de Psiquiatría Forense de Ponce o de Río Piedras y que se le realizara el 3 de abril de 2024 la evaluación psiquiátrica correspondiente.

En consecuencia, el Peticionario presentó documento intitulado *Tercera Moción de Relevo y Renuncia de Representación* el 8 de enero de 2024. El foro primario determinó *No Ha Lugar por el Momento* la solicitud instada.

Inconforme, el Peticionario recurre ante esta Curia mediante un *Recurso de Certiorari* presentado el 22 de febrero de 2024, en el cual hizo imputa al foro primario el siguiente señalamiento de error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR POR EL MOMENTO MEDIANTE RESOLUCIÓN CON FECHA DEL 23 DE ENERO DE 202[4] *SIC* LA TERCERA MOCIÓN DE RELEVO DE REPRESENTACIÓN LEGAL

Cónsono con lo antes esbozado, esta Curia, emitió y notificó *Resolución* el 27 de febrero de 2024 en la que ordenó al foro primario, al amparo de la Regla 83.1 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 83.1, fundamentar la *Orden* que declara *No Ha Lugar por el momento* el relevo de representación legal.

En respuesta, el foro primario emitió *Resolución en Cumplimiento de Orden del Caso KLCE202400224*. En esta, aclaró que "[e]l relevar al licenciado del Valle Rodríguez de la representación legal del acusado sin que se haya tomado una determinación final sobre si este es o no procesable resulta sustancialmente perjudicial para la defensa de su cliente". Añadió que, en vista de que el derecho del Lcdo. del Valle a renunciar no es absoluto, la falta de colaboración de su representado no puede ser razón suficiente para relevarlo de su obligación. Esclareció que, declaró la moción *No Ha Lugar por el Momento al considerar* la etapa crucial de los procedimientos. La intervención del Lcdo. del Valle es imprescindible por estar en mejor posición que cualquier otro abogado para atender el caso, y no será hasta que culmine el proceso al amparo de la Regla 240 de Procedimiento Criminal, *supra*, que el foro primario estará en mejor posición para tomar su determinación final.

Con el beneficio de la comparecencia del Peticionario y el dictamen fundamentado del foro primario, procedemos a exponer la normativa jurídica.

## II.
### A. *Certiorari*

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc.,* 212 DPR ___ (2023); 2023 TSPR 65 resuelto el 8 de mayo de 2023. Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (4) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni sin parámetros. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019). La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que se deben tomar en consideración al evaluar

si procede expedir un auto de *certiorari*. Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón y otros*, 213 DPR __ (2023), 2023 TSPR 145, resuelto el 19 de diciembre de 2023. Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, supra*, págs. 712-713. No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

### Código de Ética Profesional

"Al renunciar la representación profesional de un acusado, el abogado deberá tener presente y cumplir con lo dispuesto en el Canon 20 de Ética Profesional". *Pueblo v. Durecort*, 106 DPR 684 (1978). El Canon 20 del Código de Ética Profesional ("Canon 20") regula la renuncia de representación legal, advierte al abogado que "haya comparecido ante un tribunal en representación de un cliente [que] no puede ni debe renunciar la representación profesional de su cliente sin obtener primero el permiso del tribunal y **debe solicitarlo solamente cuando exista una razón justificada** e imprevista para ello". 4 LPRA Ap. IX. (énfasis nuestro).

El Canon 20 a su vez ordena al abogado o abogada a tomar medidas razonables antes de renunciar para así evitar perjuicio a los derechos de sus clientes. Estas medidas son:

> notificar de [la renuncia] *sic* al cliente; aconsejarle debidamente sobre la necesidad de una nueva representación legal cuando ello sea necesario; concederle tiempo para conseguir una nueva representación legal; aconsejarle sobre la fecha límite de cualquier término de ley que pueda afectar su causa de acción o para la radicación de cualquier escrito que le pueda favorecer; y el cumplimiento de cualquier otra disposición legal del tribunal al respecto, incluyendo la notificación al tribunal de la última dirección conocida de su representado. *Id.*

No empecé a lo antes expuesto, el foro primario no se ve obligado, sin más, a aceptar la renuncia. Es decir, aun si el abogado o abogada cumpliese con los requisitos establecidos en el Canon 20, el Tribunal, en el ejercicio de su discreción, puede negar la solicitud si entiende que los derechos del cliente se verán adversamente afectados.

El Tribunal Supremo de Puerto Rico ha expresado que "[e]l riesgo al que se expone el cliente ante la renuncia de su abogado es directamente proporcional a la complejidad del caso y a la etapa procesal en la que se encuentre". *Blanco Matos v. Colon Mulero*, 200 DPR 398, 421 (2018).[3] Por tanto, al adjudicar una moción de renuncia de representación legal, el foro primario debe "evaluar si concederla causará disloques significativos en la tramitación del caso para evitar, de esta manera, dilaciones inapropiadas en los procesos judiciales por renuncias inoportunas". *Id.* (*citando a* S. Steidel Figueroa, *Ética para Juristas: Ética del Abogado y Responsabilidad Disciplinaria*, San Juan, Ed. Situm, 2016, pág. 315. Por tal razón, lo fundamental al evaluar una solicitud de renuncia es "salvaguardar los derechos sustantivos del cliente y promover la celeridad y economía en los procesos judiciales". *Id.*

---

[3] Aunque en *Blanco Matos v. Colon Mulero*, 200 DPR 398 (2018) se haya dilucidado una controversia al amparo de la Regla 9.2 de Procedimiento Civil, 32 LPRA Ap. III R. 9.2., el análisis del Tribunal Supremo es de extrema pertinencia y aplicabilidad al Canon 20.

Como ya expresamos, mientras mayor sea la probabilidad de que los derechos del cliente se vean amenazados, más riguroso debe ser el foro primario al sopesar los factores y dictaminar sobre la petición de renuncia. Un caso ilustrativo de esta norma fue *Pueblo v. Durecort, supra,* donde el Tribunal Supremo de Puerto Rico determinó que "salvo en casos excepcionales, no deberá aprobarse una renuncia de representación profesional presentada en fecha tan cercana al señalamiento de la causa para juicio que pudiera tener el efecto de provocar la suspensión".

Todo abogado o abogada que considere solicitar la renuncia de representación legal debe tener todo lo anterior presente ya que "el abogado es un funcionario del tribunal y, como tal, está bajo el sagrado deber de cooperar en la administración de la justicia mediante la defensa activa de los intereses del litigante y de los altos intereses de la justicia". *Pueblo v. Jiménez*, 77 DPR 687,692 (1974).

### B. Reglamento de Abogados y Abogadas de Oficio

El Tribunal Supremo de Puerto Rico, en el ejercicio de su poder inherente para reglamentar la profesión de la abogacía, promulgó el Reglamento para la Asignación de Abogados y Abogadas de Oficio de Puerto Rico ("Reglamento"). *In re Aprobación del Nuevo de Reglamento para la Asignación de Abogados y Abogadas de Oficio en Procedimientos de Naturaleza Penal*, 173 DPR 653 (2008). Estas reglas fueron promulgadas con el propósito de "implementar un sistema para la administración uniforme de las asignaciones de oficio en los procedimientos de naturaleza civil y penal aplicables". *In re Aprobación del Reglamento para la Asignación de Abogados y Abogadas de Oficio de Puerto Rico, Enmienda a la Regla 36 del Reglamento del Programa de Educación Jurídica Continua y Enmienda a la Regla 9 del Reglamento del Tribunal Supremo*, 201 DPR 261, 271 (2018)**.** Este reglamento a su vez "fomentará el trabajo pro bono y hará viable el cumplimiento de todo abogado y de

toda abogada con su responsabilidad ética de ofrecer servicios legales libre de costo a personas indigentes". *Id.*

Las más recientes enmiendas al Reglamento establecen los criterios para autorizar el relevo de representación legal. *In Re Enmiendas Al Reglamento para la Asignación de Abogados y Abogadas de Oficio de Puerto Rico*, 211 DPR 49 (2022). Específicamente, expone en su Regla 8(h) que "[r]ealizada la asignación de oficio, solo podrá relevarse al abogado o a la abogada que presente una moción al tribunal y demuestre una causa justificada conforme con lo dispuesto en el ordenamiento ético". *Id.* en la pág. 51. Añade, además, que "[e]l tribunal deberá evaluar si, conforme dispone la Regla 9(b) de este Reglamento, existe justa causa para conceder el relevo de la representación legal". *Id.*

La regla 9(b) puntualiza que "[t]odo abogado y toda abogada que solicite relevo de una asignación de oficio deberá explicar las razones que justifican el diferimiento y el relevo de la representación legal en el caso particular". *Id.* La regla, a su vez, obliga al abogado o abogada de oficio a establecer en su moción las razones que constituyen justa causa, y ofrece una lista con los siguientes ejemplos:

(1) La asignación sería onerosa en vista de la cantidad de asignaciones de oficio recibidas o de la cantidad de horas de oficio *pro bono* ofrecidas en la representación de oficio y certificadas al amparo de este Reglamento durante el año fiscal en curso.

(2) Durante el año fiscal, el abogado o la abogada recibió 3 asignaciones previas que le requirieron una inversión sustancial de tiempo. Se entenderá que un abogado o una abogada realizó una inversión sustancial de tiempo cuando las 3 asignaciones de oficio al amparo de este Reglamento le han requerido en el año fiscal en curso

   (i) la prestación, en el agregado, de más de 50 horas certificadas por el tribunal o

   (ii) la atención de juicios criminales en su fondo;

(3) La asignación implicaría un quebrantamiento de los deberes éticos de diligencia y competencia, o

(4) existan conflictos de intereses personales, éticos o profesionales.

   Se dispone expresamente que la enumeración antes expuesta no es taxativa, por lo que todo abogado y toda

abogada podrá solicitar un relevo de una asignación de oficio por otras razones que constituyan justa causa. *Id.* en la pág. 51-52.

**III.**

En el presente recurso, el Peticionario nos solicita que revoquemos la *Resolución* emitida por el foro primario el 23 de enero de 2024 y a la vez declaremos con lugar su *Tercera Moción de Renuncia y Relevo de Representación Legal.* Arguye el Peticionario que debe ser relevado de la representación legal del Sr. Benítez, pues no existe una relación de abogado-cliente que salvaguardar debido a la falta de confianza y diferencias irreconciliables entre él y su representado. Hizo hincapié en que la solicitud de relevo de representación es la acción procedente frente a las circunstancias del caso, ya que el no renunciar constituiría una violación al Canon 20 del Código de Ética Profesional, *supra.*

Expuesto el marco jurídico y ponderados los argumentos presentados por el Lcdo. del Valle, resolvemos que no se han producido las circunstancias que requieran nuestra intervención. Es decir, la determinación del foro primario de atender la moción de relevo de representación legal posterior a la evaluación del Sr. Benítez para así salvaguardar sus derechos no nos resulta arbitraria ni irrazonable a la luz del marco jurídico. Por tanto, debido a que la parte Peticionaria no ha demostrado que el foro primario se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho, no intervendremos en la determinación recurrida.

**IV.**

Por los fundamentos expuestos, ***denegamos*** la expedición del auto de *certiorari.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones