ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| DEPARTAMENTO DE EDUCACIÓN Recurrido | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan |
|---|---|---|
| v. | | |
| SINDICATO PUERTORRIQUEÑO DE TRABAJADORES Peticionario | KLCE202401006 | Caso Número: SJ2024CV05591 |
| | | Sobre: Impugnación o Confirmación de Laudo |
| COMISIÓN APELATIVA DEL SERVICIO PÚBLICO Agencia Administrativa | | |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos

Rivera Marchand, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de octubre de 2024.

Comparece ante nos, el Sindicato Puertorriqueño de Trabajadores y Trabajadoras (Unión o peticionaria) y solicita que revoquemos una *Sentencia,* notificada el 20 de agosto de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario).[1] En esta, el TPI revocó el laudo emitido por el árbitro asignado por la Comisión Apelativa del Servicio Público (CASP).[2]

Por los fundamentos que expondremos a continuación, denegamos la expedición del auto de *certiorari.* Veamos.

## I.

El 4 de octubre de 2021, la Unión presentó una petición de arbitraje ante la CASP. En esta indicó que, el Sr. Edgardo Oliveras Candelario (Sr. Oliveras Candelario), quien ocupaba el puesto regular como conserje, en la escuela Magueyes II de la Oficina Regional de Ponce del Departamento de Educación, fue suspendido de empleo y sueldo por un término de 60 días. A su entender, dicha

---

[1] Apéndice, págs. 1-7.
[2] Caso Núm. AQ-21-404, Laudo Núm. L-24-0024, *Departamento de Educación y Sindicato Puertorriqueño de Trabajadores.*

Número Identificador:

RES2024_____

sanción fue impuesta en violación a las disposiciones del convenio colectivo vigente entre la Unión y el Departamento de Educación. Ante una aparente falta de acuerdo de sumisión entre las partes, el árbitro de la CASP dispuso que el asunto a ser resuelto era:

> [d]eterminar si la AGENCIA cumplió con el término establecido en el Art. 8 Sec. 5. Inciso. 1 del Convenio Colectivo. De determinar que no se cumplió con el término establecido en el Art. 8 Sec. 5 Inciso 1, se dejará sin efecto la sanción disciplinaria, se ordenará la eliminación de cualquier documento relacionado a la sanción disciplinaria del expediente de personal de Oliveras Candelario junto con cualquier otro remedio que en derecho proceda.
>
> De concluir que la AGENCIA cumplió con los términos establecidos en el Convenio Colectivo, se determinará si la medida disciplinaria impuesta a Oliveras Candelario estuvo justificada según la prueba desfilada, el convenio colectivo y el derecho vigente. De estar justificada la medida disciplinaria, se desestimará el presente caso. De no estar justificada, se emitirá el remedio adecuado conforme a derecho.[3]

Tras la celebración de la vista de arbitraje, a la cual comparecieron las partes debidamente representadas, el árbitro emitió el laudo en controversia, mediante el cual, consignó los siguientes hechos:

1. El señor Oliveras Candelario ocupaba el puesto regular C24495 como conserje en la escuela Magueyes II de la oficina Regional de Ponce.
2. El 29 de octubre de 2019, el entonces Secretario de Educación, Eligio Hernández Pérez, Ed. D., le notificó al señor Oliveras Candelario, su intención de formular cargos y le advirtió del derecho que le asiste a una vista administrativa informal.
3. El 4 de noviembre de 2019, la UNIÓN solicitó vista administrativa informal.
4. El 31 de agosto de 2020, se emitió la orden señalando la vista administrativa informal para el 22 de octubre de 2020.
5. A solicitud de la UNIÓN, la vista fue transferida para el 5 de noviembre de 2020.
6. El 5 de noviembre de 2020, se realizó la vista administrativa informal ante la oficial examinadora Lic. Verónica Acevedo Ayala.
7. El 31 de agosto de 2021, se emitió el Informe de la Oficial Examinadora.
8. El 15 de septiembre de 2021, el Secretario de Educación emitió la carta donde le impuso a Oliveras Candelario una suspensión de empleo y sueldo por sesenta días.[4] (Notas omitidas.)

---

[3] Apéndice, págs. 10-11.
[4] Apéndice, pág. 11.

Basado en lo antes, así como en su interpretación del convenio colectivo y de los términos que regulan el proceso de medidas disciplinarias, el árbitro declaró ha lugar el petitorio de la Unión y revocó la sanción impuesta. Ello, por entender que, la acción se encontraba prescrita. En esencia, el árbitro destacó que, conforme a la Sección 5 del Artículo 8 del convenio colectivo, la agencia debía notificar la sanción disciplinaria al empleado, dentro de un término de 90 días siguientes a que el Secretario de Educación, como autoridad nominadora, comunique al empleado y al representante designado de la Unión, su intención de imponerle una medida disciplinaria.

Principalmente, fundamentó su análisis en su interpretación de lo resuelto por el Tribunal Supremo, mediante *Sentencia,* en *Departamento de Educación v. José Escalante Antonetti*, CC-2011-581 (2013).[5] Detalló que, en el caso de epígrafe, transcurrieron 687 días desde la carta de formulación de cargos y 328 días después de que se llevara a cabo la vista informal hasta la notificación de la sanción disciplinaria impuesta. Por ello, revocó la sanción disciplinaria y ordenó su eliminación del expediente del empleado, más la restitución del salario y de los beneficios dejados de percibir.

Inconforme con la determinación esbozada en el laudo, el Departamento de Educación presentó una *Revisión Judicial de Laudo de Arbitraje* ante el foro primario. En esta, señaló lo siguiente:

> Erró el Honorable Árbitro al determinar que el término establecido en la Sección 5 del Artículo 8 del convenio colectivo comienza a transcurrir a partir del momento en que el Secretario le notifica al empleado y al representante designado por la unión su intención de imponerle una medida disciplinaria, abstrayéndose del lenguaje del convenio colectivo, de la ley, la reglamentación aplicable y la jurisprudencia interpretativa.

---

[5] Apéndice, págs. 240-259. Cabe señalar que, en su pronunciamiento, hizo referencia a otros dos laudos emitidos: *Departamento de Educación y Sindicato Puertorriqueño de Trabajadores*, AQ-12-2117, L-14-098 del 11 de agosto de 2014 y AQ-13-0242, L-16-0055 del 1 de mayo de 2015.

> Erró el Árbitro de la CASP al interpretar y aplicar la norma de derecho establecida por el Tribunal Supremo en el caso *Departamento de Educación v. José Escalante Antonetti*, CC-2011-511 (2013) sobre la interpretación de la Sección 5, Inciso 1 del Artículo 8, del convenio colectivo suscrito entre el Departamento de Educación y el Sindicato Puertorriqueño de Trabajadores (SPT), revoca[n]do indebidamente la destitución del señor Oliveras Candelario por haber el Departamento de Educación supuestamente incumplido con el término establecido para notificar la sanción impuesta al recurrido.

A lo antes, la Unión se opuso. Entre otros, argumentó que, el tribunal ha de ser deferente a la interpretación del convenio colectivo que realizó el árbitro, quien actuó dentro del marco reglamentario y jurisprudencial vigente. Amparada en su interpretación de la *Sentencia* que emitió el Tribunal Supremo en *Departamento de Educación v. José Escalante Antonetti*, supra, discutió que procedía confirmar el laudo, en la medida en que, la acción disciplinaria estaba prescrita.

Tras justipreciar las posturas de las partes, el TPI emitió el dictamen apelado, en el cual, revocó el referido laudo y ordenó al foro arbitral determinar en los méritos la procedencia y corrección de la medida disciplinaria impuesta. En su pronunciamiento, el foro primario abundó sobre lo resuelto por el Alto Foro en el caso *Departamento de Educación v. José Escalante Antonetti*, supra. Destacó que, el árbitro incidió en su interpretación de la jurisprudencia citada y la distinguió del caso de marras, en la medida en que, allí se trataba de una estipulación entre la Unión y la agencia.

Aun insatisfecha, la Unión acude ante nos por entender que se cometieron los siguientes errores:

> Erró el Tribunal de Primera Instancia al declararse con jurisdicción para revisar el laudo de arbitraje L-24-0024 toda vez que no [se] configuraron ninguna de las causales establecidas en el convenio colectivo ni en la jurisprudencia aplicable para así hacerlo.

> Erró el Tribunal de Primera Instancia al sustituir su criterio por el criterio del Árbitro en un ámbito reservado

al criterio arbitral: la interpretación de las cláusulas de un convenio colectivo.

Hemos examinado con detenimiento el recurso ante nos y optamos por prescindir de los términos, escritos o procedimientos ulteriores "con el propósito de lograr su más justo y eficiente despacho". Regla 7 (b) (5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7 (b) (5).[6]

## II.

### A. Expedición del auto de *certiorari*

En lo pertinente al presente caso, la Regla 32(D) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.32(D), establece que **el recurso de *certiorari* es el vehículo procesal adecuado para revisar** las resoluciones, órdenes o **sentencias finales de un laudo de arbitraje del TPI.** Como se sabe, el recurso de *certiorari* es el mecanismo discrecional disponible para que un tribunal apelativo revise las resoluciones y órdenes interlocutorias de un tribunal de menor jerarquía. Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.52.1; *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023). Las Reglas de Procedimiento Civil disponen que el Tribunal de Apelaciones expedirá el recurso de *certiorari* cuando la parte peticionaria recurra de una resolución u orden sobre remedios provisionales, *injunctions* o de la denegatoria de mociones dispositivas. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023).

En ese sentido, el auto de *certiorari* es limitado y excluye aquellas determinaciones interlocutorias que pueden esperar hasta la determinación final del tribunal para formar parte de un recurso de apelación. *800 Ponce de León v. AIG*, 205 DPR 163, 191 (2020). El delimitar la revisión a instancias específicas tiene como propósito

---

[6] En atención a nuestra *Resolución* emitida el 19 de septiembre de 2024, la parte recurrida, Departamento de Educación, instó una *Solicitud de término adicional* para expresarse en torno al recurso de epígrafe. Mediante *Escrito en cumplimiento de orden,* la parte recurrida compareció el 18 de octubre de 2024.

evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp.*, et al., 202 DPR 478 (2019). La Regla 52.1 de Procedimiento Civil de 2009, *supra*, viabiliza por excepción la revisión de: (1) decisiones sobre admisibilidad de testigos de hechos o peritos esenciales, (2) asuntos relativos a privilegios evidenciarios, (3) anotaciones de rebeldía, (4) casos de relaciones de familia, (5) asuntos de interés público y (6) situaciones en la cuales esperar a la apelación constituye un fracaso irremediable a la justicia.

Los criterios que el Tribunal de Apelaciones examina para ejercer la discreción sobre la expedición del *certiorari* se encuentran en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA XXII-B, R.40, según enmendado por *In re: Enmdas. Regl. TA*, 198 DPR 626 (2017).[7] El foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en los cuales se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *Banco Popular de Puerto Rico v. Gómez Alayón y otros,* 2023 TSPR 145, resuelto el 19 de diciembre de 2023.

---

[7] La referida Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro). *Íd.*

### B. La revisión de los laudos de arbitraje

La negociación colectiva está revestida de un gran interés público ya que constituye un medio eficaz para promover la estabilidad y paz industrial. *C.O.P.R. v. S.P.U.,* 181 DPR 299, 312 (2011). Por ello, los convenios colectivos no deben ser catalogados como meros contratos que consagran derechos individuales, sino que se deben considerar instrumentos que crean relaciones e intereses a la luz de la política pública laboral estatal. *AAA v. UIA,* 199 DPR 638, 648 (2018).[8] Según ha sido interpretado, el convenio colectivo es consistente con el principio de la libertad de contratación, pues una vez las partes prestan su consentimiento, éste se convierte en la ley entre las partes. *C.O.P.R. v. S.P.U., supra,* pág. 320. No obstante lo anterior, cabe recordar que todo acto que goza del principio de la libertad en la contratación no puede contravenir las leyes ni la Constitución. *Íd.*

Ahora bien, como regla general, en los convenios colectivos las partes establecen voluntariamente un sistema de quejas y agravios. *Íd.*, pág. 326. Mediante dicho sistema de quejas y agravios que las partes establecen, se precisa el contenido y alcance de las disposiciones contractuales. Así las cosas, en el convenio colectivo las partes pueden pactar que sus reclamos se canalicen mediante un proceso de arbitraje. En tales casos, tanto las uniones como los patronos sustituyen a los tribunales por los árbitros. *Íd.*

A tales efectos, el Tribunal Supremo ha reconocido que el arbitraje constituye un medio más apropiado que los tribunales para la resolución de controversias, por ser más flexible, y menos técnico y oneroso. *AAA v. UIA*, 200 DPR 903, 922 (2018). Según se desprende de lo anteriormente expuesto, el arbitraje es un procedimiento de poderes delegados y mediante el convenio colectivo

---

[8] Citando a *C.O.P.R. v. S.P.U.,* supra, pág. 320.

se le confiere la autoridad al árbitro para que evalúe y resuelva las controversias que allí se especifican. A. Acevedo Colom, *Legislación protectora del trabajo comentada*, 8va ed. Rev., Puerto Rico, Ed. Ramallo Printing Bros., 2005, pág. 393.

En cuanto a los laudos arbitrales, en nuestra jurisdicción rige la norma de que éstos gozan ante los tribunales de justicia de una especial deferencia. *C.O.P.R. v. S.P.U., supra,* pág. 363-364. No obstante, lo anterior, la auto-restricción judicial reconocida en nuestra jurisdicción no es absoluta. En aquellos casos en los cuales el convenio colectivo disponga que el laudo debe ser conforme a derecho, cualquier parte afectada puede impugnarlo en el foro judicial, teniendo los tribunales la facultad para revisar su corrección y validez jurídica. A. Acevedo Colom, *op. cit.*, pág. 395; *U.G.T. v. Corp. Difusión Púb.*, 168 DPR 674, 682-683 (2006).

Cuando el procedimiento de arbitraje es conforme a derecho, ello significa que el árbitro no puede ignorar o dejar pasar por desapercibidas las normas interpretativas en el campo laboral de derecho sustantivo, emitidas por el Tribunal Supremo de Estados Unidos y el de Puerto Rico. *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 DPR 62, 68 (1987). De igual modo, las decisiones de los tribunales de primera instancia, de las agencias administrativas y los laudos arbitrales se reputarán persuasivas. *Íd.* Es por ello, que, el Tribunal no debe inclinarse fácilmente a decretar la nulidad del laudo, a menos que el mismo no haya sido resuelto conforme a derecho. No obstante, cabe indicar que una discrepancia de criterio con el laudo no justifica la intervención judicial, pues destruye los propósitos fundamentales del arbitraje, que es resolver las controversias rápidamente, sin los costos y demoras del proceso judicial. *Íd.*

La parte que solicita la revocación o anulación de un laudo por alguna de las instancias permitidas deberá exponer las razones que den lugar a su pedido y aducir la prueba necesaria que sostenga

su petición. Como antes expresado, que el laudo se haga conforme a derecho no implica que los tribunales vayan a invalidarlo por el mero hecho de que exista una discrepancia de criterio. Para invalidar el laudo, resulta necesario que surja de forma evidente que el mismo no se resolvió conforme a derecho. *Íd.*

**III.**

En la presente causa, la peticionaria argumenta que el foro primario erró al asumir jurisdicción para dejar sin efecto un laudo de arbitraje, con el efecto de mantener en vigor una medida disciplinaria que, a su entender, está prescrita. Lo antes, bajo el razonamiento de que, el término de noventa (90) días para notificar la medida disciplinaria comenzó a transcurrir desde que el Secretario de Educación comunicó su intención de formular cargos al Sr. Oliveras Candelario. Añade la peticionaria que, el TPI incidió al sustituir el criterio del árbitro por el suyo, a pesar de que la interpretación de las cláusulas del convenio es un asunto reservado para la consideración del árbitro.

En el dictamen recurrido, el TPI hizo constar que dispuso de la controversia ante sí de forma consistente con lo resuelto en *Departamento de Educación v. José Escalante Antonetti,* supra. En su análisis, el foro primario puntualizó que, distinto a lo ocurrido en el referido caso, en la causa de epígrafe, el convenio colectivo no contiene una cláusula que estipule desde qué momento comienza el plazo de noventa (90) días que ostenta el Secretario de Educación para formular los cargos en contra del Sr. Oliveras Candelario. Según su interpretación del caso citado y en ausencia de una estipulación entre la Unión y la autoridad nominadora, a esos efectos, el TPI aplicó como punto de partida para computar los noventa (90) días, el 31 de agosto de 2021, correspondiente a la fecha de la emisión del Informe de la Oficial Examinadora. Además, surge de lo resuelto en *Departamento de Educación v. José Escalante*

*Antonetti,* supra, que el Alto Foro estimó que era "lógico" interpretar que: [...] no es hasta que el Secretario de Educación, o su representante, recibe el informe del Oficial Examinador con las determinaciones formales de hechos sobre los cuáles se puede tomar acción, que el primero adviene en conocimiento oficial de los hechos alegados. Hasta ese momento, cualquier conocimiento atribuible al Secretario o su representante es extraoficial y aún es parte del proceso investigativo informal y preliminar. [...] Sin duda, esperar que todo ello suceda en un plazo de 90 días es irrazonable. [...][9] Sobre tales bases, dictaminó que la medida disciplinaria impuesta al Sr. Oliveras Candelario no está prescrita. De conformidad, revocó el laudo y devolvió el asunto ante el foro arbitral con el fin de que este evalué si la medida impuesta estuvo justificada a la luz de la prueba desfilada, del convenio colectivo y del derecho aplicable.

Luego de nuestra revisión sosegada del recurso de epígrafe, conforme al marco jurídico antes esbozado, no hemos identificado ningún criterio jurídico que justifique nuestra intervención con el dictamen recurrido. Tampoco la peticionaria nos ha puesto en posición para soslayar la norma de abstención judicial, en el ejercicio de nuestras funciones. Añádase a ello que, no existe indicación fehaciente de que el foro primario haya transgredido los parámetros doctrinales permitidos en el ejercicio de su discreción al revocar el laudo en controversia.

Por las razones que anteceden concluimos que, en el presente caso, no se reúnen los criterios que guían nuestra discreción para ejercer nuestra facultad revisora sobre el dictamen impugnado. Por tanto, en virtud de lo dispuesto en la Regla 40 del Reglamento del

---

[9] Apéndice, págs. 258-259.

Tribunal de Apelaciones, *supra,* resolvemos no expedir el auto que nos ocupa.

**IV.**

Por los fundamentos expuestos, se deniega la expedición del recurso de *Certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones