Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| CARLOS PÉREZ RIVERA<br><br>Recurrido<br><br>v.<br><br>KINDRED SPIRITS, INC., h/n/c BOTTLES y otros<br><br>Peticionaria | KLCE202500066 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2023CV07865 (802)<br><br>Sobre: Despido Injustificado (Ley Núm. 80) |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de febrero de 2025.

Comparece ante nos Kindred Spirits, Inc. ("KSI" o "Peticionaria") mediante *Petición de Certiorari* presentada el 23 de enero de 2025. Nos solicita la revocación de la *Resolución* emitida 9 de enero de 2025 y notificada el 13 de enero del mismo año por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro primario" o "foro *a quo*"). Por virtud de esta, el foro primario declaró *No Ha Lugar* la moción de sentencia sumaria instada por el Peticionario, la cual solicita la desestimación de la *Querella* sobre despido injustificado al amparo la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como Ley Sobre Despidos Injustificados, 29 LPRA sec. 185a *et seq.* ("Ley Núm. 80") interpuesta por el señor Carlos Pérez Rivera ("señor Pérez Rivera" o "Recurrido").

Por los fundamentos que expondremos a continuación, **denegamos** el presente recurso.

### I.

El 17 de agosto de 2023, el señor Pérez Rivera incoó *Querella* sobre despido injustificado contra KSI mediante el procedimiento

establecido en la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 de 17 de octubre de 1961, según enmendada (Ley Núm. 2), 32 LPRA sec. 3118 *et seq.*[1] Mediante la misma, el Recurrido expresó que trabajaba para el restaurante Bottles, establecimiento comercial de la Peticionaria. Arguyó que este trabajó para el aludido establecimiento desde abril de 2011 hasta el 2018, cuando renunció. Agregó que en el 2019 fue contratado nuevamente por la empresa hasta el 2 de febrero de 2023, fecha en la cual fue despedido. Detalló que siempre trabajó como mesero para la Peticionaria. Sostuvo que, el 2 de febrero de 2023, la señora Andrea Pérez ("señora Pérez") quien era pareja del Recurrido y clienta del restaurante Bottles, acudió al establecimiento y se sentó en la barra para hablar con la *bartender*. Indicó que la señora Pérez le solicitó al Recurrido una copa de vino y este le ofreció un *testing*, algo que, según el Recurrido, se acostumbraba a hacer en Bottles para que los clientes pudieran probar el vino antes de pedir la copa completa. Explicó que la señora Pérez probó el vino, pero no fue de su agrado por lo cual le solicitó al Recurrido una taza de café. El señor Pérez Rivera señaló que, tras esto, le requirió al gerente del establecimiento un *void* de la copa de vino, pues esta nunca se consumió. De igual forma, el Recurrido relató que posteriormente pagó el café que consumió su pareja.

De la *Querella* también se desprende que, el 3 de febrero de 2023, el señor Richard Gonsalves ("señor Gonsalves"), propietario de Bottles, le preguntó al señor Pérez Rivera por la cuenta de su pareja del día anterior. El Recurrido adujo que, ante esta pregunta, le explicó lo sucedido y acto seguido, el señor Gonsalves lo mandó para su casa y lo suspendió por dos (2) semanas. El Recurrido indicó que, posteriormente, se comunicó con el señor Gonsalves y este le

---

[1] Véase, Apéndice del Recurso, págs. 524-528.

comentó que él "se encontraba bajo investigación". Así pues, señaló que, el 16 de febrero de 2023, el Recurrido fue notificado de su despido. Ante este cuadro fáctico, el señor Pérez Rivera instó una causa de acción por despido injustificado y solicitó la mesada que, conforme a la Ley Núm. 80, ascendía a un total de cincuenta y dos mil trecientos cincuenta y un dólares con cincuenta y cinco centavos ($52,351.55).

En respuesta, el 8 de septiembre de 2023, KSI presentó *Contestación a Querella.*[2] En esta negó ciertas alegaciones y levantó defensas afirmativas. En específico, afirmó que el señor Pérez Rivera le sirvió una cantidad significativa de vino a una dama que se encontraba sentada en el área de la barra. Aseguró que en Bottles no se acostumbraba a hacer *testing* de copas de vino y que esto únicamente se hacía cuando algún cliente compraba una botella de vino, para corroborar si el vino estaba dañado y no para saber el vino era del agrado del cliente. Asimismo, la Peticionaria también enfatizó en que esta no fue la única situación en la que el Recurrido le sirvió una bebida a su novia y no le cobró. Explicó que de una investigación que hizo la compañía, se descubrió que, el 27 de enero de 2023, el Recurrido le sirvió una taza de café a su novia y tampoco le cobró. Así pues, concluyó que este tipo de conducta justificaba el despido del Recurrido, aun si esta fuera su primera violación.

Transcurrido varios eventos procesales, el 26 de septiembre de 2024, KSI presentó *Solicitud de Sentencia Sumaria.*[3] Por virtud de este escrito, la Peticionaria alegó que el Recurrido, en dos (2) ocasiones distintas, regaló propiedad de KSI sin autorización alguna, lo que constituía en una crasa violación de las normas razonables de KSI. Sostuvo que el señor Pérez Rivera recibió y firmó las normas de la empresa que explícitamente prohibían las

---

[2] *Íd.*, págs. 519-523.
[3] *Íd.*, págs. 458-471.

conductas incurridas por este, por lo que, ante la gravedad de esta acción, KSI no tuvo otra opción que terminar con la relación de empleo con el Recurrido, para así velar por el buen funcionamiento de la empresa.

Por su lado, el 31 de octubre de 2024, el señor Pérez Rivera presentó *Oposición a Solicitud de Sentencia Sumaria.*[4] En lo pertinente, argumentó que KSI no presentó prueba suficiente para demostrar que el despido no fue por error o inadvertencia del Recurrido ni tampoco que probara que este regaló propiedad de la Peticionaria. Igualmente, esbozó que las medidas disciplinarias de Bottles, exigían que estas fueran progresivas a aquellos empleados que violaran dichas normas. Puntualizó que las reglas de Bottles no establecía qué se debía hacer cuando un cliente rechazaba una copa de vino que no era de su agrado, pues no había norma escrita sobre esa situación. Del mismo modo, arguyó que era uso y costumbre que, de surgir algún error o discrepancia en la cuenta, los supervisores podían borrar artículos de los *tickets*. Por último, esgrimió que gran parte de los argumentos que esbozó la Peticionaria descansaban en un video que no fue producido ya que cuando se solicitó, presuntamente no existía.

Por su parte, el 26 de noviembre de 2024, KSI presentó *Réplica en Apoyo de Moción de Sentencia Sumaria y Oposición a Argumentos y Hechos Adicionales.*[5] Mediante la misma, argumentó que el Recurrido no pudo controvertir los hechos alegados en la solicitud de sentencia sumaria, los cuales, a juicio de KSI, demostraron que el señor Pérez Rivera incurrió en conducta prohibida por la empresa, al reglarle productos que eran propiedad de la Peticionaria a su novia. Por su lado, el señor Pérez Rivera presentó *Duplica a "Réplica en Apoyo de Moción de Sentencia Sumaria y Oposición a Argumentos*

---

[4] *Íd.*, págs. 102-135.
[5] *Íd.*, págs. 65-101.

*y Hechos Adicionales"*.[6] En esencia, reiteró que KSI no sustentó sus alegaciones con prueba por lo que en este caso existían varios hechos materiales en controversia, lo que impedía la resolución del pleito por la vía sumaria.

Así las cosas, el 9 de enero de 2025, notificada el 13 de enero del mismo año, el foro primario emitió *Resolución*.[7] Por virtud de esta, el foro *a quo* enumeró las siguientes determinaciones de hechos que no estaban en controversia que se transcriben a continuación:

1. El Carlos Pérez trabajó para la KSI desde abril de 2011 hasta el 2018 y desde el 2019 hasta el 16 de febrero de 2023.
2. En los momentos relevantes de este caso, Carlos Pérez se desempeñó como mesero.
3. Kindred Spirits, Inc. es la entidad jurídica propietaria de un restaurante que hace negocios como Bottles.
4. Richard Gonsalves es el presidente de Kindred Spirits, Inc.
5. 5.Edward Velásquez fue el supervisor de Carlos Pérez, específicamente, al momento de los hechos descritos en la Contestación de la querella.
6. Para enero y febrero de 2023, Carlos Pérez y Andrea Pérez tenían una relación sentimental. Para ese momento no había políticas que previnieran que un mesero atendiera a alguien con quien estuviera envuelto sentimentalmente.
7. Carlos Pérez le sirvió a Andrea Pérez una prueba de vino blanco en una copa.
8. Cuando Andrea Pérez se cambió de mesa, se llevó para la otra mesa el vino que Carlos Pérez le había servido.
9. Esa mesa a la que se cambió Andrea Pérez no le tocaba a Carlos Pérez, pero este último le sirvió un café.
10. Cuando Andrea Pérez se fue del restaurante, no pagó la cuenta porque Carlos Pérez le dijo que él la pagaría.
11. El vino que Carlos Pérez le sirvió a Andrea Pérez el 2 de febrero de 2023 era propiedad de KSI.
12. Andrea Pérez le dijo a Carlos Pérez que no le gustó el vino, no le dijo a este que estaba dañado.
13. Andrea Pérez se fue del restaurante sin pagar el vino que el Querellante le había servido.
14. Luego de que Andrea Pérez se fuera del restaurante sin pagar la cuenta, Carlos Pérez le pidió a Edward Velásquez que le diera *void* del sistema al vino por copa que le había servido a Andrea Pérez.
15. Los meseros no pueden dar *void* en una transacción, son los supervisores quienes tienen esta potestad.

---

[6] *Íd.*, págs. 14-64.
[7] *Íd.*, págs. 2-13.

16. Los supervisores tienen la discreción, usando su sentido común, de decidir a que se le puede y a que no se le puede hacer *void*.

17. Richard Gonsalves les ha instruido a sus supervisores que hagan *void* en transacciones en las que hay un error o cuando la comida o bebida está dañada. Sin embargo, no recuerda ninguna ocasión en la que les instruyera casos específicos en los que no se debería dar *void*.

18. Antes de realizar el *void*, Edward Velásquez había visto la copa de vino en la mesa.

19. Edward Velásquez le dio *void* a la copa de vino.

20. Cuando se hace un "*void*" se hace para un producto en el sistema y esto tiene el efecto de borrar la transacción, lo cual sería como si el producto nunca fue servido.

21. Edward Velásquez llamó a Richard Gonsalves y le informó que había hecho un *void* de una mesa de Carlos Pérez, en el cual había something fishy about it y que iba a investigarlo.

22. Esa misma noche, Edward Velásquez vio el vídeo de las cámaras de seguridad.

23. Según lo visto por Edward Velásquez en el vídeo, Andrea Pérez no consumió la copa completa de vino.

24. Edward Velásquez no fue suspendido ni despedido por haber realizado el *void*.

25. Según lo recordado por Richard Gonsalves, sobre la anulación del *ticket*, Carlos Pérez le dijo a este que a la clienta no le había gustado la copa de vino o algo así.

26. No existe una política escrita de Bottles en la que se establezca qué un mesero debe hacer.

27. El 3 de febrero de 2023, Richard Gonsalves le informó a Carlos Pérez que estaba suspendido, pendiente a una investigación.

28. El restaurante tiene cámaras de seguridad, las cuales Carlos Pérez desconocía y no se le había notificado de su existencia.

29. En la investigación se encontró que, el 27 de enero de 2023, Andrea Pérez acudió a KSI con su familia y fueron ubicados en la mesa # 73. El querellante, Carlos Pérez le sirvió un café.

30. El recibo de la mesa #73, en la cual se encontraba Andrea Pérez, no incluye una taza de café. El recibo fue por la suma de $639.60.

31. Edward Velásquez no llamó a Carlos Pérez para saber la razón por la que el café no estaba en el *ticket* y tampoco se lo mencionó, sino que le dio la información a Richard Gonsalves.

32. El procedimiento habitual cuando falta algo en el *ticket* es llamar al mesero y pedirle una explicación o que pague lo que falta.

33. Carlos Pérez había cometido errores anteriormente y cuando se le informaba de estos, pagaba por cualquier error que apareciera en el *ticket*.

34. Las reglas e instrucciones de KSI, las cuales están firmadas por Carlos Pérez, establecen que los siguientes actos pueden resultar en el despido inmediato del empleado: "Robo, hurto, apropiación ilícita o posesión sin autorización de propiedad y/o el Patrono,

35.  *shoplifting*, falsificación de documentos de contabilidad u otros documentos, fraude o malversación de fondos—independientemente de la cantidad o valor."

36.  Carlos Pérez no tiene autoridad para regalar propiedad de KSI. Regalar alguna propiedad de KSI es incorrecto y constituye una falta grave sin importar el precio que pueda tener la propiedad.

   a.  Las Reglas e Instrucciones de Bottles para empleados no supervisores establecen:
      Primera Ofensa: en violación de esta regla por primera vez. será suspendido sin paga por un turno.

   b.  Segunda Ofensa: en violación de esta regla por segunda vez, será suspendido sin paga por tres turnos.

   c.  Tercera Ofensa: en violación de esta regla por tercera vez, se dará por terminado por causa justificada.

37.  En el expediente de Carlos Pérez, el único documento disciplinario es uno por llegar treintaminutos tarde en una ocasión el 29 de septiembre de 2021 (Escolios omitidos).[8]

Cónsono con estas determinaciones de hechos, el foro primario concluyó que, en cuanto al asunto de la taza de café no cobrada, KSI no presentó prueba con relación a que, en efecto, no se trató de un error o una inadvertencia por parte del Recurrido. Además, en cuanto al asunto de la copa de vino, determinó que había varias cuestiones de credibilidad, puesto que la prueba de KSI estableció que Edward Velásquez, supervisor del Recurrido, realizó el *void* debido a que el señor Pérez Rivera le comunicó que fue un error, mientras que la versión del Recurrido giraba en torno a que este le comunicó que el vino no le gustó a la clienta, entre otros asuntos. De igual modo, el foro primario resaltó aparentes contradicciones de la prueba presentada por la Peticionaria. En ese sentido, el foro *a quo*, declaró *No Ha Lugar* la solicitud de sentencia sumaria presentada por KSI y, por consiguiente, ordenó la continuación de los procesos.

Inconforme con este resultado, el 23 de enero de 2025, KSI presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

---

[8] *Íd.*, págs. 3-6.

Erró el TPI al imponer el peso de la prueba a KSI de que lo ocurrido el 27 de enero de 2023 no fue un error e inadvertencia a pesar de que el estado de derecho vigente le impone el peso de la prueba al empleado.

Erró el TPI al hacer determinaciones de hecho que no están sustentados por la prueba.

Erró el TPI al hacer conclusiones de derecho que no están sustentados por la prueba, ni por sus propias determinaciones de hecho.

Erró el TPI al declarar No Ha Lugar la sumaria presentada por KSI toda vez que el acto cometido por Carlos el 27 de enero de 2023, por sí solo justifica el despido de KSI.

El 27 de enero de 2025, emitimos *Resolución* en la que le concedimos un término de diez días al Recurrido para que expusiera su posición en torno al recurso. Oportunamente, el 6 de febrero de 2025, el señor Pérez Rivera presentó *Oposición a que se Expida el Auto de Certiorari.* Con el beneficio de la comparecencia de todas las partes, procedemos a exponer la normativa jurídica aplicable al caso de autos.

## II.

### A. Certiorari

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos

de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (4) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni sin parámetros. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019). La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari.* Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR __ (2023), 2023 TSPR 145, resuelto el 19 de diciembre de 2023. Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, supra*, págs. 712-713. No obstante, "[a]l denegar la

expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

### B. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a fondo. *Birriel Colón v. Econo y otro,* 213 DPR ___ (2023), 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Segarra Rivera v. Int'l Shipping et al.,* 208 DPR 964, 979 (2022). La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, permite que, en un litigio, cualquiera de las partes le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra.* No obstante, para que una sentencia sumaria proceda, es necesario que de los documentos que la acompañan, se demuestre que no existe una controversia real sobre los hechos y solo reste aplicar el derecho. *Birriel Colón v. Supermercado Los Colobos e Integral Assurance Company, supra; SLG Szendrey v. Consejo de Titulares,* 184 DPR 133, 138 (2011); *Ramos Pérez v. Univisión de Puerto Rico, Inc.,* 178 DPR 200, 214 (2010).

Para poder demostrar eficientemente la falta de controversia sobre hechos esenciales, el promovente de la sentencia sumaria debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su entender, no hay controversia. Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3.

En *Meléndez González et al. v. M. Cuebas,* 193 DPR 100 (2015), el Tribunal Supremo estableció "el estándar específico" que debe utilizar este Foro al "revisar denegatorias o concesiones de

Mociones de Sentencia Sumaria". A esos efectos, el Tribunal dispuso que:

> el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018), citando a *Meléndez González et al. v. M. Cuebas, supra,* págs. 118-119.

Es decir, planteada una revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que debe evaluar las mociones presentadas en el foro primario y cumplir con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra,* al emitir su dictamen. *Meléndez González et al. v. M. Cuebas, supra.* "[L]a revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor". *Birriel Colón v. Supermercado Los Colobos e Integral Assurance Company, supra,* citando a *Meléndez González et al. v. M. Cuebas, supra.*

Por su parte, la Regla 36.4 de Procedimiento Civil, *supra,* dispone que si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente

y de buena fe controvertidos. De la misma forma, el tribunal deberá establecer hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando así que los procedimientos ulteriores sean justos en el pleito. *Íd.* A tono con lo anterior, la precitada regla establece que, al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. *Íd.*

**III.**

En el presente recurso, la Peticionaria solicita nuestra intervención discrecional por vía del recurso de autos, a los efectos de que revoquemos la *Resolución* emitida por el foro primario, en la que, en el ejercicio de su discreción, determinó que existían controversias reales y materiales que impedían se dictara sentencia sumaria. Aun cuando la Regla 52.1 de Procedimiento Civil, *supra,* nos faculta a revisar las denegatorias de mociones de carácter dispositivo, como lo es la sentencia sumaria, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos.

De entrada, es preciso destacar que la *Resolución* recurrida cumple cabalmente con lo exigido en la Regla 36.4 de Procedimiento Civil, *supra,* en cuanto a los pleitos no decididos en virtud de una moción de sentencia sumaria. Cónsono con lo anterior, luego de considerar *de novo* el expediente del caso, en particular con respecto a los hechos en controversia determinados por el Tribunal de Primera Instancia, no advertimos que tal disposición sobre la existencia de conflictos en la prueba resulte irrazonable, sino más bien que encuentran base en los escritos atinentes.

De igual forma, KSI no ha demostrado que el foro primario abusó de su discreción o que medió error, pasión, prejuicio o parcialidad al emitir la determinación impugnada. Además, no nos encontramos ante una situación que amerite nuestra intervención

para evitar un fracaso de la justicia. Por tanto, al amparo de los criterios que guían nuestra discreción, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. Por virtud de lo anterior, procede denegar el recurso de epígrafe.

**IV.**

Por los fundamentos expuestos, **denegamos** la expedición del auto de *certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones